Jefferson GRIFFIN, Appellant,

v.

STATE of Indiana, Appellee.

No. 580 S 121.

Supreme Court of Indiana.

Jan. 27, 1981.

Harriette Bailey Conn, Public Defender of Indiana, David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., George B. Huff, Jr., Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Jefferson Griffin was charged in Jay Circuit Court with Class C burglary, Ind.Code § 35–43–2–1 (Burns 1979 Repl.), and with being a habitual criminal under § 35–50–2–8. Griffin was tried to a jury and convicted on the burglary charge. In a bifurcated proceeding, he was found to be a habitual criminal. The trial court first sentenced appellant to an eight-year term on the burglary count, and then added the obligatory thirty years for the habitual criminal finding. This appeal followed.

Appellant Griffin raises ten issues for our consideration, concerning: (1) whether the trial court improperly assisted the State in preparing its case; (2) whether the trial court erred in denying Griffin's motion for a psychological evaluation; (3) whether the trial court erred in admitting State's exhibits three and four into evidence; (4) whether the trial court erred in denying Griffin's motion in limine and in overruling his objections to testimony which related to the subject matter of that motion; (5) whether the trial court erred in refusing to grant a mistrial due to the prosecutor's allegedly improper final argument; (6) whether the trial court erred in admitting State's exhibits A through D in the habitual criminal phase; (7) whether the trial court erred in giving final instruction number seventeen in the habitual criminal proceeding, and in ordering counsel not to mention certain matters in arguments to the jury; (8) whether the trial court erred in giving final instructions 6A through 6C in the habitual criminal phase; (9) whether the guilty verdict on the burglary count is supported by sufficient evidence; and (10) whether the eight-year term for the burglary conviction violated appellant's right against double jeopardy.

The record reveals that appellant Jefferson Griffin and his brother, Frank Griffin, were apprehended at approximately 11:30 p. m. inside the Redkey Community Church. Investigating officers had discovered boot-prints in the snow leading from a parked car to a door of the church. The door had been pried open to gain entry. The Griffins' footwear matched the impressions in the snow. A screw-driver and flashlight were discovered in Jefferson Griffin's possession, and a crowbar and a flashlight were discovered in Frank Griffin's possession. Police officers discovered several items strewn about the pulpit area, but the minister of the church testified that nothing was taken.

I.

Appellant first argues that the trial court improperly assisted the prosecution in the preparation of its case. Griffin asserts that the trial judge advised the prosecutor at the pretrial conference concerning certain questions of evidence. He contends such counselling constituted a breach of the trial judge's duty to remain impartial.

While we agree with appellant's assertion that the trial judge must refrain from acting with partiality, *see Brandon v. State,* (1979) Ind., 396 N.E.2d 365; *Brannum v. State,* (1977) 267 Ind. 51, 366 N.E.2d 1180, the record here simply does not show improper conduct on the part of the trial court. The only reference in the record to this matter shows the following:

"Also brief discussion is had of the required certified record referring to Trial Rule 44 and Indiana Code § 34–1–17–7, at which point Mr. Ludy objects to the discussion of record keeping standards, indicating that the same amounts to assistance of the court to the State, and the objection is overruled."

Record at 136. It is appellant's obligation to provide us with an adequate record which clearly shows the alleged error of which he complains. *See generally Flewallen v. State,* (1977) 267 Ind. 90, 368 N.E.2d 239. This record plainly does not show that the trial court acted in a prejudicial or otherwise improper manner.

## II.

Appellant Griffin next alleges the trial court erred in denying his motion for a psychological evaluation. The record reveals that Griffin filed a motion for a determination of competence to stand trial, pursuant to Ind.Code § 35–5–3.1–1 (Burns 1979 Repl.), and a special plea of insanity, under § 35–5–2–1. In response to the competency issue, the trial court ordered an examination of Griffin by two psychiatrists, *see* § 35–5–3.1–1, and held an evidentiary hearing on the question of Griffin's ability to understanding the proceedings and assist in the preparation of his defense. Part of the record of these proceedings are the reports filed by the two examining psychiatrists. Both experts concluded that Griffin understood the charges against him and is not suffering from a metal disease or illness. They also concluded that Griffin has an antisocial personality, but that he was competent to stand trial. Accordingly, the trial court ruled that Griffin had the ability to understand the proceedings and assist in the preparation of his defense.

Thereafter, Griffin, by his new counsel, filed a "Motion for In-Depth Psychological Evaluation" at a State mental health facility. The sole basis for this motion was "the interests of justice." On the following day, the trial court held that the testimony and evaluation made by the two psychiatrists constituted sufficient compliance with § 35–5–2–2, and that Griffin had shown no justification for any further examination and evaluation. The court then denied Griffin's motion. Appellant now claims the court's refusal to order further examination at state expense hampered his preparation of his insanity defense.

 Generally, the appointment of experts to assist in the preparation of the defense is a matter committed to the trial court's discretion. To show reversible error, appellant must show that the trial court's decision on this question constituted an abuse of discretion. *Roberts v. State,* (1978) 268 Ind. 127, 373 N.E.2d 1103. *See Norris v. State,* (1979) Ind., 394 N.E.2d 144; *Owen v. State,* (1979) Ind., 396 N.E.2d 376;

*Murphy v. State,* (1976) 256 Ind. 116, 352 N.E.2d 479. In the case before us, the trial court appointed two psychiatrists to examine Griffin to determine his competency to stand trial and his sanity at the time of the commission of this offense. Both concluded that he was legally sane. Appellant has not shown that the psychiatrists' evaluations were improper or inadequate, nor has he shown how additional examinations by additional court-appointed experts would have changed matters in any way. A boilerplate assertion that the additional examinations were required "in the interests of justice" is not sufficient to show an abuse of discretion by the trial court in failing to order additional examinations at state expense. *Roberts v. State, supra. See Norton v. State,* (1980) Ind., 408 N.E.2d 514, 525; *Bell v. State,* (1977) 267 Ind. 1, 6–7, 366 N.E.2d 1156, 1159. This issue is without merit.

## III.

 Griffin contends certain items of physical evidence were erroneously admitted into evidence by the trial court. State's exhibits three and four, a flashlight and a pry bar, were admitted into evidence after testimony established that these items were found in the possession of appellant's companion at the scene of the crime. Appellant now asserts that, because these exhibits were not shown to have been in his possession they should not have been admitted as evidence against him.

We hold the trial court did not err in admitting these exhibits. These items were clearly relevant to show the commission of a burglary. *See Hill v. State,* (1979) Ind., 395 N.E.2d 132. Their possession by Griffin's companion does not diminish their relevance to prove his guilt. The acts of the defendant's partner were fully attributable to the defendant. *E. g., Irons v. State,* (1979) Ind., 397 N.E.2d 603; *Proctor v. State,* (1979) Ind., 397 N.E.2d 980; *Rogers v. State,* (1979) Ind., 396 N.E.2d 348; *Barnes v. State,* (1978) 269 Ind. 76, 378 N.E.2d 839. Thus, the possession and use of the pry bar and the flashlight by Griffin's cohort—and, hence, the items themselves—

were probative on the question of Griffin's participation in the burglary. These exhibits were properly admitted.

## IV.

■ Appellant argues the trial court erred in denying his motion in limine and overruling his objections to questions asked of him on cross-examination. Griffin requested in his motion in limine that the State be ordered not to cross-examine him for impeachment purposes concerning the prior convictions which were alleged in the habitual criminal information. This motion was overruled. During the trial on the burglary charge, Griffin took the witness stand on his own behalf. He testified that he had no memory of the crime in question. On cross-examination, the prosecutor asked Griffin if he had been convicted of burglary on April 9, 1976, in Shelby County, Indiana. After defense counsel's objection was overruled, Griffin answered affirmatively. The prosecutor then asked Griffin if he had been convicted of possession of stolen property on June 7, 1974, in Rush County, Indiana. Counsel's objection was again overruled, and Griffin again answered affirmatively. In the bifurcated habitual offender proceeding, documentary evidence of these convictions was admitted to show that Griffin was a habitual criminal.

Appellant contends the State should not have been allowed to force him to admit under oath that he had committed the crimes which were alleged in the habitual criminal count. He asserts that permitting this question placed him in the position of either not taking the witness stand in his own defense, or taking the witness stand and, in effect, helping the State prove the essential elements of the habitual criminal allegation. Thus, he argues, his right to testify in his own behalf was chilled.

We disposed of the identical issue in *Jameison v. State*, (1978) 268 Ind. 599, 377 N.E.2d 404. In that case, the defendant filed a motion in limine similar to the motion Griffin filed in this case. When the trial court denied the motion in limine, defendant Jameison decided not to testify.

This Court held that the trial court had not erred in overruling the motion. We explained that, under *Ashton v. Anderson*, (1972) 258 Ind. 51, 279 N.E.2d 210, the credibility of a witness may be impeached by showing prior convictions for crimes involving dishonesty or false statement. We further noted:

"The trial court complied in all respects with the bifurcated trial requirements of *Lawrence v. State*, (1972) 259 Ind. 306, 286 N.E.2d 830. The jury heard direct evidence of the appellant's prior crimes in the habitual criminal proceeding and was bound to adjudicate him solely on the basis of that evidence. We fail to see how any undue prejudice could have arisen in the habitual criminal trial from the use of evidence of prior crimes to impeach appellant at the principal trial."

268 Ind. at 603, 377 N.E.2d at 406–07. In the case now before us, the prior convictions brought up on cross-examinations came within the rule of *Ashton v. Anderson, supra*. Further, just as in *Jameison v. State*, the jury here heard direct, independent evidence of Griffin's prior convictions in the habitual offender phase of the proceedings. We also note that Griffin presented an insanity defense. Under our well established rules, then, evidence of his prior convictions also would have been admissible in the trial on the burglary charge on the question of sanity, whether or not Griffin chose to testify in his own defense. *See, e. g., Lock v. State*, (1980), Ind., 403 N.E.2d 1360, 1366. Therefore, the exercise of either choice would not have affected the presentation of this evidence, for an alternative, limited purpose, to the jury. The trial court did not err in overruling appellant's motion in limine, nor in refusing to limit the State's cross-examination as to his prior convictions. *Jameison v. State, supra. See Shepler v. State*, (1980) Ind., 412 N.E.2d 62, 69.

## V.

■ Appellant Griffin next alleges error in the trial court's refusal to grant his motion for mistrial made during final argu-

ment. The basis of the defendant's motion was the prosecutor's reference in his argument to the facts of analogous cases disposed of by this Court on appeal. The cases which the prosecutor referred to concerned, in part, the sufficiency of evidence. The prosecutor read a brief portion from each of two cases, and noted the similarities of the cited cases to Griffin's case. Counsel then objected and moved for a mistrial.

The trial court properly overruled appellant's motion for a mistrial. We have held on several occasions that reading from decisions to the jury is proper in final argument. E. g., Owen v. State, (1979) Ind., 396 N.E.2d 376, 380; Hubbard v. State, (1974) 262 Ind. 176, 182, 313 N.E.2d 346, 350; Klepfer v. State, (1889) 121 Ind. 491, 494, 23. N.E. 287, 288. See Bryant v. State, (1933) 205 Ind. 372, 380, 186 N.E.2d 322, 325. Appellant urges us to reconsider our decisions in those cases, contending that this technique causes confusion and misleads the jury. We believe that, so long as it is clear, as it was in this case, that the prosecutor is reading from or referring to a separate case, the jury will not be misled or confused. We decline to overturn the rule of the cases cited above, and we hold the trial court properly denied appellant's motion for a mistrial.

## VI.

■ Appellant Griffin next challenges the trial court's ruling on the admissibility of State's exhibits A, B, C, and D, which were introduced during the habitual offender stage of the proceedings. These exhibits were a series of documents which showed two of Griffin's prior convictions. Appellant argues that these documents were not properly authenticated, and that the prosecutor did not establish their connection to him. He did not specify to the trial court, nor does he specify to us here, the alleged deficiency of the authentication. Exhibit A was a probable cause affidavit filed in the Rush Circuit Court under cause number CR 74–29. This item was sworn by one Marvin L. Hedrick, who, at that time, was a Rush County Deputy Sheriff. Hedrick alleged in the probable cause affidavit that Griffin was found in possession of an article which had been stolen from an Indiana State Highway Department garage. Hedrick testified during the habitual offender phase and identified appellant Griffin as being the same individual referred to in the affidavit. Exhibit B was an information filed under the same Rush County cause number, charging Griffin with possession of stolen property under Ind.Code § 35–17–5–3(1)(f) (Burns 1975). Exhibit C was a copy of a criminal docket sheet from Rush County, showing that Griffin pled guilty as charged in the information, and that this plea was accepted by the trial court. Each of these documents was certified by the Rush Circuit Court Clerk as being true and complete copies of the records of the case. These documents showed that Griffin had been convicted of theft in 1974. See § 35–17–5–3(1)(f), supra.

Exhibit D was a series of documents, including a probable cause affidavit, an arrest warrant, an information charging "Jeff Griffin and John Dixie" with first degree burglary, under Ind.Code § 35–13–4–4 (Burns 1975), and a criminal docket sheet from Shelby Superior Court. This docket sheet shows that Jefferson Griffin pled guilty to entering to commit a felony and was sentenced accordingly. See Ind.Code § 35–13–4–5 (Burns 1975). Norman Collins, the Shelby County Deputy Sheriff who made the probable cause affidavit, identified Griffin in court as the same "Jeff Griffin" named in his affidavit. This set of documents was certified by the Shelby Superior Court Clerk as being true and complete copies of the records of that case. These documents showed that Griffin had been convicted of entering to commit a felony in 1976. See § 35–13–4–5, supra.

We believe the trial court correctly found these exhibits to be properly authenticated under Ind.Code § 34–1–17–7 (Burns 1973) and Ind.R.Tr.P. 44(A). See Eldridge v. State, (1977) 266 Ind. 134, 361 N.E.2d 155. The trial court also properly found a sufficient connection between these documents and appellant Griffin. Therefore, the court

did not err in admitting these exhibits into evidence.

## VII.

■ Griffin next contends the trial court erred in giving final instruction number seventeen in the habitual criminal proceeding. This instruction provided:

"These instructions do not contain any information concerning the penalties that could be imposed as a result of a finding against defendant in this matter. The judge is solely responsible for assessing the penalties in the manner prescribed by law. The law has been so written so that you may make your decisions without being influenced by the apparent severity or leniency of the possible penalties."

Supp. Record at 134. The trial court also ordered that the jury not be made aware of the habitual criminal penalty throughout the taking of testimony, nor during final argument. Appellant claims this instruction and order prevented the jury from fully discharging its duty to judge the law and the facts under article one, section nineteen of the Indiana Constitution.

We hold the trial court's instruction and order were entirely proper. We have disposed of identical or similar arguments in several recent cases. *E. g., Comstock v. State,* (1980) Ind., 406 N.E.2d 1164; *Craig v. State,* (1979) Ind., 398 N.E.2d 658; *Debose v. State,* (1979) Ind., 389 N.E.2d 272; *Drake v. State,* (1979) Ind., 397 N.E.2d 600. As we stated in *Craig v. State, supra:* "To date no persuasive argument has been presented to this Court that the accused in a criminal prosecution has a right to have the jury informed as to potential penalties where the jury does not engage in the sentencing function." 398 N.E.2d at 660. This issue is without merit.

## VIII.

■ Appellant argues the trial court erred in giving certain final instructions, numbers 6A, 6B and 6C, during the habitual criminal phase. Instruction 6A informed the jury that, in 1974, an Indiana statute provided that a person convicted of theft might receive a sentence of from one to ten years, depending on the circumstances of the offense. Final instruction 6B provided:

"You are further instructed that at all times relevant to this cause of action, including on and prior to June 7, 1974, that a person convicted of theft was convicted of a felony since, regardless of the sentence pronounced under Ind.Code § 35–17–5–12, theft is a felony and cannot be a misdemeanor."

Supp. Record at 122. Final instruction 6C informed the jury that, under the law applicable in 1976, a person who committed the offense of entering to commit a felony was to receive a sentence of from one to ten years. Instructions 6A and 6C clearly related to Griffin's prior convictions for theft and entering to commit a felony. Ind.Code § 35–50–2–8(d) (Burns 1979 Repl.) provides that the jury may find that the defendant is a habitual criminal only if the state proves "beyond a reasonable doubt that the person has accumulated two prior unrelated felony convictions." Griffin contends the language of this statute required the State to prove that his prior convictions were felonies; he also asserts that the question of whether the offenses of which he was convicted were felonies was for the jury to determine. Appellant argues, therefore, that these instructions effectively relieved the State of part of its burden of proof. We disagree.

Whether an offense is a "felony" is purely a question of legislative categorization; it is not a question of fact for the jury, but a matter of law predetermined by the legislature and applied by the judiciary. Ind. Code § 35–50–2–1 (Burns 1979 Repl.). *See Collins v. State,* (1981), Ind., 415 N.E.2d 46. The pertinent question of fact for the jury to determine in a habitual offender proceeding is whether the accused has two prior convictions. The question of whether those alleged convictions were for felonies is for the trial court to determine, based on the relevant statutes, before evidence of the convictions is presented to the jury.

We view this issue as analogous to the question of whether the jury should be in-

formed of the habitual offender penalty. See Issue VII, *supra.* In *Drake v. State,* (1979) Ind., 397 N.E.2d 600, 601–02, we stated:

"[I]nasmuch as the jury is not . . . charged with the responsibility of assessing the penalty upon a verdict of guilty, it would be improper for it to be instructed concerning potential sentences. 'Such an advisement can only invite the jurors to be influenced by their independent judgment of the fairness of the statute—a matter dehors their task—in making their determination.' *Garcia v. State,* (1979) Ind., 394 N.E.2d 106, 111.

In *Beavers v. State,* (1957) 236 Ind. 549, 141 N.E.2d 118, we held that although our Constitution grants to juries the right to determine the law, it is to do so under the guidance of the trial judge. Hence, the jury's right to determine the law is not without limitation.

We agree . . . that the penalty provided by an offense is a part of the law. Nevertheless, if the jury cannot alter the penalty provided, and clearly it cannot, no valid purpose could be served by its disclosure. Whether or not the jury approves of the penalty provided has no bearing upon the defendant's guilt or innocence. . . . "

Thus, we held in *Drake v. State* that the trial court properly refused to apprise the jury of the habitual offender penalty.

Allowing the jury to determine the status of an offense—as a felony or misdemeanor—would produce similar undesirable results. Permitting the jury to determine whether Griffin's prior convictions, for theft and entering to commit a felony, were for felonies, would invite their independent judgment as to the fairness of the categorization of those offenses as felonies by the legislature. Whether the jury approves of the categorization of the offenses as felonies has no bearing on whether the accused has been convicted of those offenses. Thus, allowing the jury to make such a judgment would give that body the opportunity to move far outside its realm and consider totally irrelevant factors in deciding the defendant's status as a habitual offender. In addition, permitting the jury to determine whether a given offense is a felony would allow them to decide a pure question of law which has previously been settled by the legislature; given such an opportunity, the jury might possibly reach a different conclusion from that properly drawn by the legislature.

The challenged instructions properly informed the jury of certain principles of law promulgated by our legislature. These instructions did not relieve the State of the burden of proving beyond a reasonable doubt that Griffin had accumulated two felony convictions. As explained above, these instructions properly directed the jury's thought processes, and thereby guarded against their consideration of inappropriate and irrelevant matters. The trial court did not err in giving these instructions.

IX.

Griffin next argues there was insufficient evidence to support the conviction for burglary. Specifically, he challenges the adequacy of proof as to the status or nature of the victim. The burglary statute, Ind.Code § 35–43–2–1 (Burns 1979 Repl.), provides: "A person who breaks and enters the building or structure of another person with intent to commit a felony in it, commits burglary, a Class C felony." § 35–41–1–2 further defines "person" in the following fashion: " 'Person' means a human being, corporation, partnership, unincorporated association, or governmental entity." Appellant Griffin asserts there was no evidence from which the jury could infer that the Redkey Community Church was a "person" under these statutes. We do not agree.

The pastor of the Redkey Community Church, John Gibson, testified as to the nature and location of the church property. He stated that he was employed by the Church and was in charge of the church building which was broken and entered into. His testimony raised the inference that the Redkey Community Church, in

fact, owned the property and the buildings in question. The specific legal status of the church was not disclosed. We think, however, the jury could properly find the church to be an "unincorporated association" under § 35–41–1–2, *supra*. We believe the legislature without a doubt intended that the term "unincorporated association" should encompass entities or organizations such as this church. *See generally Short v. State*, (1954) 234 Ind. 17, 122 N.E.2d 82. Therefore, we hold there was sufficient evidence to support the jury's finding of guilt on the burglary charge.

## X.

■ Finally, appellant Griffin challenges the trial court's sentencing decision as to the burglary count. The jury convicted Griffin of Class C burglary, and then found him to be a habitual criminal. The trial court subsequently sentenced Griffin to eight years on the burglary charge; the court then added thirty years to that sentence due to Griffin's status as a habitual offender.

Ind.Code § 35–50–2–6 (Burns 1979 Repl.) establishes the sentencing range for a Class C felony conviction:

"A person who commits a Class C felony shall be imprisoned for a fixed term of five years, with not more than three years added for aggravating circumstances or not more than three years subtracted for mitigating circumstances; in addition, he may be fined not more than ten thousand dollars."

In addition, Ind.Code § 35–4.1–4–7 (Burns § 35–50–1A–7, 1979 Repl.) provides:

"CRITERIA FOR SENTENCING.—(a) In determining what sentence to impose for a crime, the court shall consider the risk that the person will commit another crime, the nature and circumstances of the crime committed, and the prior criminal record, character, and condition of the person.

(b) The court may consider these factors as mitigating circumstances or as favoring suspending the sentence and imposing probation:

(1) The crime neither caused nor threatened serious harm to persons or property, or the person did not contemplate that it would do so.

(2) The crime was the result of circumstances unlikely to recur.

(3) The victim of the crime induced or facilitated the offense.

(4) There are substantial grounds tending to excuse or justify the crime, though failing to establish a defense.

(5) The person acted under strong provocation.

(6) The person has no history of delinquency or criminal activity, or he has led a law-abiding life for a substantial period before commission of the crime.

(7) The person is likely to respond affirmatively to probation or short-term imprisonment.

(8) The character and attitudes of the person indicate that he is unlikely to commit another crime.

(9) The person has made or will make restitution to the victim of his crime for the injury, damage, or loss sustained.

(10) Imprisonment of the person will result in undue hardship to himself or his dependents.

(c) The court may consider these factors as aggravating circumstances or as favoring imposing consecutive terms of imprisonment:

(1) The person has recently violated the conditions of any probation, parole, or pardon granted him.

(2) The person has a history of criminal activity.

(3) The person is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility.

(4) Imposition of a reduced sentence or suspension of the sentence and imposition of probation would depreciate the seriousness of the crime.

(5) The victim of the crime was sixty-five [65] years of age or older.

(6) The victim of the crime was mentally or physically infirm.

(d) The criteria listed in subsections (b) and (c) of this section do not limit the matters that the court may consider in determining the sentence."

The habitual offender statute, Ind.Code § 35–50–2–8 (Burns 1979 Repl.), provides for the following sentencing result: "A person who is found to be an habitual offender shall be imprisoned for an additional fixed term of thirty years, to be added to the fixed term of imprisonment imposed under section 3, 4, 5, 6, or 7 [§§ 35–50–2–3–35–50–2–7] of this chapter." Thus, by the terms of this statute, the trial court was required to add thirty years to whatever sentence was initially imposed on the burglary charge under § 35–50–2–6.

At the conclusion of the sentencing hearing, the trial court made the following pronouncement:

"Very well. Sentencing hearing held and concluded and the court finds defendant has a history of criminal and serious delinquency offenses or activity; the defendant needs correctional or rehabilitative treatment not available locally or best provided by commitment to prison. Imposition of a reduced sentence or probation would be improper because of the seriousness of the crime. The victim of the crime was a church. The crime is not suspendable by law. There is a relatively high risk that defendant will commit another crime. In fact it is certain to a high degree that he will. Defendant is such a person that he should not be allowed to be out on the streets again. He is a sociopath even though legally sane. The nature and circumstances of the crime committed and the prior criminal record, bad character and condition of defendant are factors favoring up to the maximum sentence of 8 plus 30 or 38 years and/or consecutive sentencing."

Record at 728–29. Appellant Griffin contends the "same exact factors" were used to sentence him on both the burglary count and the habitual criminal count. He asserts that the trial court should not have been allowed to increase the initial sentence for burglary due to certain factors, and then add the mandatory thirty-year term for habitual criminality in response to those same factors. The factors appellant refers to, of course, concern his past criminal record. Griffin asserts that the trial court used his prior convictions for theft and entering to commit a felony to raise the total sentence on two occasions: in finding and applying the aggravating circumstances under §§ 35–50–2–6 and 35–4.1–4–7, and in assessing the additional thirty years under § 35–50–2–8. Appellant argues that his right against double jeopardy will be violated if this Court permits the trial court to "punish the defendant twice (aggravate his sentence twice in the same proceeding) based on the same facts."

In *Elmore v. State*, (1978) 269 Ind. 532, 382 N.E.2d 893, we explained that the right against double jeopardy prohibits: (1) reprosecution for the same offense after acquittal; (2) reprosecution for the same offense after conviction; and (3) multiple punishment for the same offense. *See North Carolina v. Pearce*, (1969) 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. In addition, we noted in *Wise v. State*, (1980) Ind., 400 N.E.2d 114, 117, that a person found to be a habitual criminal "is subjected to the greater sentence neither for the prior crimes nor for the status of habitual offender, but rather the enhanced sentence is imposed for the last crime committed." The appellant in *Wise v. State* argued that allowing sentencing based on proof of prior convictions violated his right against double jeopardy. We explained, however, concerning the second and third categories listed in *Elmore v. State, supra,* that the sentencing for the immediate crime is enhanced by "the fact of those convictions and is not based on the same facts which established those prior crimes." 400 N.E.2d at 117. Therefore, the habitual offender sentencing provision is "neither a separate criminal charge nor an additional penalty for the earlier crimes." Thus, the use of prior convictions to enhance the sentence for the immediate crime does not constitute a reprosecution for the same offense after a conviction, nor does such use result in multiple punishment for the same offense.

Therefore, enhancing the sentence in this fashion for the immediate crime does not violate double jeopardy. This is true where those prior convictions are used as aggravating circumstances to increase the sentence, under § 35–4.1–4–7, *supra*, and where they are used to support the finding that the defendant is a habitual offender, under § 35–50–2–8, *supra*. Appellant Griffin can therefore show no double jeopardy violation.

Moreover, appellant is incorrect in his assertion that the two prior convictions for theft and entering to commit a felony were the sole basis of the trial court's finding of aggravating circumstances under § 35–4.1–4–7. The presentence report concerning Griffin lists frequent instances where Griffin has run afoul of the law, and shows nearly a lifetime of incorrigible behavior. When the trial court pronounced the sentence, he noted that Griffin needs treatment which is not available locally or which is best provided by commitment to an institution; that the victim of the crime was a church; that he is "certain to a high degree" that Griffin would commit more crimes; and that Griffin is a sociopath, even though legally sane. The trial court was correct in considering each of these factors, and it is clear that the court did not base its finding of aggravating circumstances solely on the two prior convictions which were used to find that Griffin was a habitual criminal.

Thus, Griffin has shown no error in the trial court's performance of its sentencing function. Further, we do not find the sentence imposed here to be manifestly unreasonable in light of the nature of the offense and the character of this offender. As we explained above, we find this sentence to be fully authorized by statute. Therefore, we are not at liberty to revise the sentence. Ind.R.App.Rev.Sent. 2.

Finding no reversible error, we affirm the judgment of the trial court.

All Justices concur.