John D. SHELTON, III., Appellant,

v.

STATE of Indiana, Appellee.

No. 984 S 364.

Supreme Court of Indiana.

March 27, 1986.

Wallace E. Weakley, Sheridan, Terrance W. Richmond, Richmond, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Justice.

Appellant John D. Shelton was tried before a jury and convicted of murder and criminal confinement, a class B felony. Shelton was sentenced to consecutive terms of imprisonment of sixty years and twenty years, respectively. His murder sentence was enhanced by an additional thirty years since he was also found to be an habitual offender.

Appellant raises eight issues in this direct appeal:

(1) Whether the evidence is sufficient to sustain his convictions;

(2) Whether the trial court erred by denying his motion to suppress the statements he made to the police;

(3) Whether certain State's exhibits were improperly admitted into evidence;

(4) Whether the trial court erroneously refused to admit a videotaped statement which he gave to Oklahoma police;

(5) Whether the State intentionally withheld impeachment evidence in violation of a discovery order;

(6) Whether the failure to hold an initial hearing on the habitual offender count is reversible error;

(7) Whether the court wrongly instructed the jury that his prior convictions constituted felonies, and

(8) Whether the trial court sufficiently stated the aggravating circumstances which warranted imposition of consecutive sentences.

These are the facts which tend to support the trial court's judgment.

On August 27, 1982, John Shelton (appellant), Sam Catrabone (co-defendant), and Dianna Ingram (the murder victim) were socializing at a massage parlor with some friends. Catrabone and Ingram argued throughout the evening and he struck her several times. Ingram went with appellant and Catrabone into a back room of the massage parlor. When they subsequently emerged Ingram was bound and gagged and in an hysterical state.

Ingram warned Catrabone that she was going to report his physical abuse to the police. Catrabone started hitting her, pointed his .38 gun at her, and threatened to "blow [her] brains out." Janet Beasley was standing in the hallway when she overheard appellant and Catrabone conversing in another room. Catrabone told Shelton that he "ought to blow her brains out." Shelton responded that he "knew the perfect place to take her."

After tempers had cooled down, appellant, Catrabone and Ingram left the massage parlor at around 6 a.m. Catrabone had said he would drive her home and appellant accompanied them. Appellant and Catrabone returned to the massage parlor at 8 a.m. the 28th. Appellant told Danny Azbell that they took Ingram to a soybean field where he shot her. He then handed the gun to Catrabone and assumed he also shot her since he heard another shot as he walked away. Shelton told Dawn Beasley that he shot Ingram in the back of the head and then handed the gun to Catrabone. Similarly, he told Janet Beasley that they took Ingram to a bean field and killed her. Ingram was down on her knees holding onto the leg of one of her assailants when she was shot.

Appellant stayed with an acquaintance, Richard Dale Horn, periodically during September and October of 1982. In mid-September Shelton told Horn that he had shot and killed a young woman. The next month appellant asked Horn if he knew how long it took a body to decompose. Appellant showed Horn a newspaper clipping regarding the discovery of a woman's body and told Horn that he and Catrabone took her out there and he shot her in the head.

The newspaper article reflected Officer Dick Russell's trip to a farm in southern Hamilton County on October 12, 1982, after the farmer notified authorities that he had found a decomposed body in his soybean field. An autopsy performed by Dr. Richard McClure on the same day revealed that the cause of death was a gun shot wound to the head. An examination of dental

records positively identified the skeletal remains as those of Dianna Ingram.

McClure removed bullet fragments from the victim's skull. A firearms and toolmark examiner concluded that one fragment was a .35 caliber bullet, which is the caliber bullet fired from a .38 caliber gun.

### I. Sufficiency of the Evidence

Appellant argues that the evidence is insufficient to sustain his convictions. When confronted with a challenge to the sufficiency of the evidence, this Court does not weigh the evidence or judge the credibility of the witnesses. Rather, we consider only that evidence most favorable to the State and all the reasonable inferences which can be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact beyond a reasonable doubt, then the judgment must be affirmed. *Gatewood v. State* (1982), Ind., 430 N.E.2d 781.

The last time Ms. Ingram was seen alive was when she left the massage parlor with Shelton and Catrabone. When the two men returned to the massage parlor a couple of hours later Shelton told three acquaintances that they took Ingram to a soybean field where he shot and killed her. Several months later he relayed this same story to a man with whom he was living. The evidence is clearly sufficient to sustain his convictions.

### II. Motion to Suppress Statements

Appellant argues that the trial court erred by denying his motion to suppress statements which he made to the police regarding the location of the body and the murder weapon. His argument is twofold. First, he claims a proper advisement of rights and waiver did not precede the statements. Second, he says the statement was not voluntary since the police took him to the murder scene.

At a hearing on Shelton's motion to suppress, Officer Russell testified that he advised Shelton of his *Miranda* rights. Shelton told Russell that he understood these rights and then stated that he would show them where the gun was discarded. When appellant testified at this hearing, he stated that he did not recall being advised of his rights.

When reviewing the denial of a motion to suppress a confession where the evidence is conflicting, only that evidence which tends to support the trial court's ruling will be considered. If the trial court's ruling is supported by substantial evidence of probative value, it will not be disturbed. *Chandler v. State* (1981), 275 Ind. 624, 419 N.E.2d 142.

An express written or oral waiver of rights is not necessary to establish a waiver. *Powell v. State* (1982), Ind., 437 N.E.2d 969. The trial court's ruling is supported by Russell's testimony that he orally advised Shelton of his *Miranda* rights before he made any statement to the police. Shelton's act of speaking after he acknowledged that he understood his rights constituted an implied waiver.

Appellant also maintains that his statement was not voluntarily made because the police drove him to the scene of the murder. Appellant had been extradicted from Oklahoma to Indiana. Officers Dave Landis and Russell were driving Shelton from the Indianapolis airport to Hamilton County. Shelton consented to a detour to the murder scene, which he told officers was the place where they left the body and where the bullets and gun were thrown. A subsequent search did not recover either the bullets or the gun.

To determine whether a statement was given voluntarily, we look to all the surrounding circumstances to determine whether it was induced by any violence, threats, promises, or other improper influences. *Ortiz v. State* (1976), 265 Ind. 549, 356 N.E.2d 1188. The police requested and received permission from Shelton to drive to the murder scene. Shelton was advised of his rights before he made any statements to the police. In addition, there is no evidence of any coercion exerted by the police. Under these circumstances, ac-

companing the police to the murder scene does not render any statements made involuntary.

## III. Exhibits

Appellant argues that State's exhibits numbered 6, 8, 10, 11, 12, 13, 14, and 16 were improperly admitted into evidence at his trial.

Appellant argues that the trial court erred by admitting photographs of the decomposed body of the victim (Exhibits 6 and 8). He maintains that since he did not dispute that a body was found in the soybean field that these photographs were irrelevant and served no purpose other than to prejudice the jury. These exhibits were properly admitted as photographs of the crime scene depicting the body of the victim at the time of discovery. *Grimes v. State* (1983), Ind., 450 N.E.2d 512.

Appellant argues that the trial court erred by admitting photographs, exhibits 10 and 11, without requiring the State to show that the objects themselves were unavailable.

Exhibit 10 is a photograph of the bullet fragments which were removed from the victim's skull. Officer Russell was present at the autopsy when Dr. McClure removed these fragments. McClure laid these fragments on a paper towel and Russell immediately photographed them. Russell identified the photograph as a true and accurate depiction of the fragments which he received from McClure. McClure also identified this exhibit as the fragments which he removed from the victim's skull.

Exhibit 11 was identified by McClure as a side view of the x-ray of the victim's skull. He testified that it was a true and accurate depiction. This exhibit was offered so the jury could see the abnormality shown by the x-ray which indicated to the doctor that there was a foreign material inside the victim's skull. After observing this abnormality, McClure opened the skull and removed the bullet fragments.

A witness' testimony that the picture is a true and accurate representation of the evidence portrayed is the foundation which must precede the admission of a photograph. *Brim v. State* (1984), Ind., 471 N.E.2d 672. It appears that the bullet fragments had been admitted as evidence in another trial and that the original x-ray was in the custody of the hospital where it had been taken. Under these circumstances, we find the trial judge's decision to admit the exhibits was within the range of his discretion.

Appellant argues that the autopsy photographs (exhibits 12, 13, and 14) should have been excluded due to their gruesome and cumulative nature:

(1) Exhibit 12: is a photograph of the open skull which shows the impact point of the metallic fragments which Dr. McClure removed.

(2) Exhibit 13: is a photograph of the right side of the skull which shows the point of entry of the projectile behind the ear (internal perspective).

(3) Exhibit 14: is a photograph of the external perspective of the point of entry.

Dr. McClure identified each exhibit as being a true and accurate depiction of the victim's skull. These exhibits were placed on an easel and displayed for the jury while McClure explained his autopsy procedures and his findings.

The decision to admit photographic evidence lies with the trial judge and will be reversed only upon the showing of an abuse of discretion. *Douglas v. State* (1984), Ind., 464 N.E.2d 318. These photographs of the victim's skull are not particularly gruesome and were relevant to McClure's explanations and findings regarding how he determined the cause of death. *Drollinger v. State* (1980), 274 Ind. 5, 408 N.E.2d 1228.

Exhibit 16 is a photograph of Ingram as she appeared shortly before her death. Shelton argues that this photograph was irrelevant and was only designed to arouse the passion of the jury towards the victim. While it is true that the photograph of the victim before her

death could well have highlighted the brutality of shooting a young woman in the head and leaving her body in a soybean field, perpetrators of such acts are not entitled to have their deeds completely sanitized when evidence is submitted to a jury. Further, given the remaining evidence against Shelton, it seems unlikely that admission of her photograph buttressed the State's case in any significant way. Admission of Exhibit 16 was not an abuse of the trial court's discretion.

## IV. Videotaped Statement

■ Appellant argues that a videotaped statement which he gave to the Oklahoma police was erroneously excluded. The trial court sustained the State's hearsay objection when Shelton offered this statement.

The Tulsa, Oklahoma, police were sent a teletype from the Indiana State Police requesting a search of specified areas in order to locate Shelton. The Tulsa police found him and subsequently took a statement from him. When questioned about prior convictions, Shelton stated that he "never killed anyone and was just a thief." The challenged statement was a self serving declaration made by Shelton which was not subject to cross-examination by the State since he decided not to testify at trial. As such, the statement was properly excluded. *Marts v. State* (1982), Ind., 432 N.E.2d 18.

## V. Impeachment Evidence

■ Appellant argues that the State intentionally withheld requested evidence which he could have used to impeach the State witnesses. Citing *United States v. Agurs* (1972), 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, he maintains that the intentional withholding of such evidence denied him due process of law.

On December 20, 1982, appellant filed a motion for discovery which requested the State to furnish the following information:

(1) The names and addresses of persons whom the the State intends to call as witnesses.

(2) Any record of prior criminal convictions which may be used for impeachment of the State witnesses.

The State filed an initial list of potential witnesses on April 28, 1983, and an amended list on January 18, 1984. George Music's name appeared on this amended witness list. The State also gave Shelton a supplemental response on January 18, 1984, listing the impeachable convictions for Music. Shelton complains that he did not receive a list of impeachable offenses for witness Danny Azbell. During cross-examination, Azbell admitted that he sold drugs for income. Defense counsel also questioned Richard Dale Horn regarding the sale of drugs; he denied doing so. However, defense counsel did not question either witness about prior criminal convictions. Appellant maintains that he was prejudiced by the State's failure to provide the impeachment evidence because there may have been other witnesses who had prior convictions.

Shelton has not established that the State has violated the terms of his discovery request. While Azbell admitted that he sold drugs, there is no indication that he or any other State witness had prior criminal convictions which were not disclosed to Shelton. Moreover, Shelton did not pursue any remedial action based upon the State's alleged violation.

## VI. Initial Hearing

Appellant argues that the trial court erred by failing to hold an initial hearing on the habitual offender count. Consequently, he was not afforded an opportunity to enter a plea. He maintains that he was not provided with sufficient notice of the habitual offender charge and thus was unable to properly and adequately prepare a defense for the habitual offender hearing which was held on February 13, 1984.

The State filed the habitual offender count three days before the scheduled trial date of February 6, 1984. On February 6, 1984, appellant responded by filing a motion *in limine* which sought to prohibit testimony about his prior convictions dur-

ing the first phase of his bifurcated trial since he was also charged with being an habitual offender. This motion listed the same prior convictions which the State alleged in the habitual offender count.

■ At an arraignment the accused is brought before the court, notified of the charges against him, and then asked for his plea. *Bradford v. State* (1983), Ind., 453 N.E.2d 250. Notification of the charges is usually achieved by reading the information or indictment to the accused. While arraignment is an appropriate procedure for habitual offender counts, the failure to arraign one charged as an habitual offender does not present grounds for reversal in the absence of prejudice. *Edwards v. State* (1985), Ind., 479 N.E.2d 541. In this case, Shelton had notice of the habitual offender count prior to trial. He was informed ten days prior to the habitual offender hearing of the prior convictions which the State intended to prove at these proceedings. Had this time period been deemed inadequate, he could have moved for a continuance of the second phase of his bifurcated trial. Shelton has failed to show how he was harmed by the failure to hold an initial hearing.

### VII. Felony Determination

The State's evidence during the habitual offender proceeding consisted of documents showing four different convictions, all of them for violations of federal statutes. Appellant has claimed that this evidence did not prove that the convictions were for crimes classified as felonies.

■ Actually, the State's evidence demonstrated that Shelton had been sentenced to more than a year on one of the four convictions, which satisfies the definition of a felony for purposes of Indiana's habitual offender statute. Ind.Code § 35–50–2–1. With respect to the other three offenses, the prosecutor asked that the trial judge take judicial notice of the federal statutes upon which the convictions were based and he did so. Those statutes indicate that the offenses qualified as felonies under Ind. Code § 35–50–2–1.[1]

At the close of the trial, the judge charged the jury as follows: "You are instructed that the offenses alleged were felonies for purpose of the application of the Indiana Habitual Offender statute." Shelton objected to this instruction as taking away from the jury one of the ultimate facts which the State is required to prove in an habitual offender proceeding.

■ While this author reads the habitual offender statute as indicating a legislative intent that all the elements of proof be submitted for a jury determination,[2] this Court has earlier concluded that instructions such as the one given in this case are not erroneous. *Griffin v. State* (1981), 275 Ind. 107, 415 N.E.2d 60. Since the evidence indicates that the unrelated offenses charged by the State were in fact felonies, Shelton's request for reversal on this issue is denied.

### VIII. Statement of Aggravating Factors

Appellant argues that the trial judge did not sufficiently articulate "the facts which

---

1. 18 U.S.C. § 2312. Transportation of stolen vehicles. Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

   18 U.S.C. § 751. Prisoners in custody of institution or officer. (a) Whoever escapes or attempts to escape from the custody of the Attorney General or his authorized representative, or from any institution or facility in which he is confined by direction of the Attorney General, or from any custody under or by virtue of any process issued under the laws of the United

States by any court, judge, or magistrate, or from the custody of an officer or employee of the United States pursuant to lawful arrest, shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years or both ...

2. Ind.Code § 35–50–2–8(d). A person is an habitual offender if the jury (if the hearing is by jury), or the Court (if the hearing is to the court alone), finds that the state has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated felonies.

are peculiar to the particular defendant and the crime" when he gave his statement of reasons for imposing consecutive sentences. Quite the contrary is true.

Judge Puckett's statement of reasons for imposing consecutive terms indicates that he evaluated and balanced the factors he considered with the particular facts he knew about Shelton and the crime. Each of his four statements articulated the aggravating circumstances. Indicative of the very thorough statement of reasons provided by Judge Puckett is the following:

> The circumstances surrounding the offenses in this cause and the defendant's record reflect the character of the defendant indicating a strong likelihood of repetition of serious criminal involvement unless sufficiently and properly deterred by the imposition of the sentences herein. The nature of defendant's criminal involvement indicates a progressive increase in the seriousness of his criminal involvement. The fact that his criminal record includes two escape charges is further indicative of the defendant's attitude about submitting to authority and abiding by the law.

The judgment of the trial court is affirmed.

GIVAN, C.J., and PIVARNIK and DICKSON, JJ., concur.

DEBRULER, J., concurs in result.