**Steven G. LEE, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 79S00–8704–CR–417.

Supreme Court of Indiana.

Dec. 21, 1988.

Susan K. Carpenter, Public Defender, Teresa D. Harper, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of the crime of Burglary, a Class C felony, for which he received a five (5) year sentence enhanced by thirty (30) years by reason of his status as an habitual offender, and Attempted Theft, a Class D felony, for which he received a sentence of two (2) years, the sentences to run concurrently.

The facts are: On July 30, 1986, Scott Blevins was at the Kendrick Buick Agency in Lafayette to clean the premises. As he approached the main building, he noted police officers outside. When he heard sounds and saw lights flashing, he looked through a window into the office where he saw the silhouette of a man at the safe with a torch. Blevins reported this fact to the police officers.

Officer Conn radioed for assistance and other officers soon arrived at the scene. The office was smoky and dusty with cement, and the safe was hot and marked with burns. Officers found appellant in a bathroom near the office. After appellant was handcuffed, removed from the building and placed in a police car, the officers continued to examine the premises.

They found that entrance had been gained through a service door next to an overhead door. There were pry marks on the service door. A window in an interior door between the body shop and parts department was broken. The counter window at the service desk was open. Employees stated that when the business was closed the night before the doors were locked and the premises secure. They further testified that appellant had no permission to be inside the building.

Appellant initially gave his name as Rickie Abrams. However, police found a wallet in a car parked nearby that contained a drivers license with the name Josh Lee and appellant's picture. It turned out that Josh Lee is appellant's brother. When police later confronted appellant with the name Steven Lee, he admitted that was his correct name.

Appellant claims the trial court erred in denying his motion to suppress statements he made following his arrest. Immediately following his apprehension at the scene, police officers advised appellant of his *Miranda* rights. He then was asked if he had a car near the premises, which he denied. It was later that the police found the car as above related. When appellant arrived at the police station, he again was read his *Miranda* warnings and signed them indicating that they had been read to him. However, he did not sign the waiver form.

Appellant takes the position that he stated at that time he did not want to talk to the police any further. However, police officers testified at the suppression hearing that he made no such statement, and although the waiver form was not signed, appellant continued to talk freely. Police were not actually engaged in interrogation of appellant; however, one of them remarked, "[Y]ou got to get credit that's a very professional job." To which appellant responded, "[I]t's not good enough was [sic] it?" The only other remark made by appellant was made as he was pacing the floor in the police station and engaging in small talk with the officers. He suddenly stated, "I fucked up didn't I?" These two remarks constitute the entire conversation attributed to appellant at the police station.

■ As far as appellant's response to the police inquiry at the scene as to wheth-

er he had an automobile there, that cannot be interpreted as custodial interrogation of appellant calculated to cause him to incriminate himself. He was being taken into custody, and if he in fact had an automobile on or near the scene, the police would have had a responsibility to secure that vehicle. Such an inquiry by the police can only be interpreted from its inception as an attempt to benefit appellant.

The fact that appellant answered in the negative when in fact he had driven his brother's vehicle to the scene was not a consequence of the questioning which the police would logically be expected to anticipate. Be that as it may, no harm could possibly have resulted in view of the fact that he had in fact been given his *Miranda* warnings before that simple question had been asked.

■ As to the statements made at the police station after appellant had signed the *Miranda* warning but made without his having signed the waiver form, we would point out that this Court has previously held that the mere refusal to sign a waiver form does not in and of itself constitute an exercise of his *Miranda* rights. *Norris v. State* (1986), Ind., 498 N.E.2d 1203. In addition, the record in this case shows that appellant did not refuse to sign the waiver form; it simply was not presented to him for signature. The police officers testified that had they been in the process of taking a formal statement from appellant he would have been required to complete a waiver form.

■ When one examines the entire situation in this case, it becomes clear that the police did not need nor seek a complete statement of guilt from appellant. He had been found hiding inside the burglarized premises, and it was abundantly obvious that he had been trying to open the safe with a cutting torch. Throughout the entire process, the police never entered into serious interrogation of appellant but merely had engaged in conversation with him concerning the situation. In view of this record, the trial court was well within its discretion in determining that the comments made by appellant were given of his own free will and without any pressure on the part of the police. The trial court did not err in denying appellant's motion to suppress.

Appellant contends the trial court erred in denying his motion for mistrial after information regarding his status as a fugitive from Michigan was placed before the jury. When Detective Napier was on the witness stand, he made a statement that another officer had said to appellant, "[Y]ou're an escapee from Michigan." When appellant's counsel immediately objected, the trial court sustained the objection and admonished the jury to disregard the officer's statement.

■ It is unfortunate that the officer made such a statement and the trial court certainly was correct in striking the statement from the record and admonishing the jury to disregard it. However, when such a situation arises, the trial court is faced with the fact that a mistrial is an extreme remedy which should be granted only when nothing else can rectify the situation. *King v. State* (1987), Ind., 508 N.E.2d 1259. Normally an admonishment to the jury will suffice to cure the harm. *Scott v. State* (1987), Ind., 510 N.E.2d 170, *cert. denied,* — U.S. —, 108 S.Ct. 492, 98 L.Ed.2d 490.

■ In looking at the entire record in this case to determine whether the harm had been so great as to warrant a mistrial, it is apparent the trial court was justified in taking into consideration the overwhelming evidence against appellant as far as the instant crime was concerned. In view of that evidence, it is hardly realistic to believe that the improper comment by the police officer could be considered a serious factor in appellant's conviction. There was no error in the trial court's refusal to grant the motion for mistrial.

Appellant claims the trial court erred in denying his motion for mistrial based on the prosecutor's comment in rebuttal argument on appellant's failure to introduce evidence in his defense. During final argument to the jury, appellant's counsel called the jury's attention to the fact that the

State's evidence had included proof of the use of some type of iron bar to pry open the door through which appellant entered the place of business and that the iron bar was found inside the establishment. He raised the question that the State had made no attempt to prove that the iron bar found was in fact the instrument used to pry open the door.

In rebuttal to that argument made by appellant, the prosecutor merely observed that appellant also could have made such tests if he desired. Although the trial judge was correct in sustaining an objection to the prosecutor's remark and admonishing the jury to disregard it, it can hardly be said that such an oblique remark rose to the level of an improper comment on appellant's failure to testify. The jury was fully instructed that the entire responsibility of presenting the evidence was upon the State of Indiana which had a duty to prove beyond a reasonable doubt that appellant had committed each element of the offenses charged. We cannot say under the circumstances that the prosecuting attorney's comment required the drastic measure of a mistrial. *Id.*

Appellant contends that the trial court erred in the habitual phase of the trial in giving an instruction defining as felonies each of the prior crimes committed by appellant. It is true that the State bears the burden of proving those elements necessary to constitute the status of habitual offender. However, it is the factual situation, demonstrating that appellant is indeed the person who has been at least twice previously convicted of felonies, that establishes his status as an habitual offender.

Appellant concedes that the issue of the judge's instruction to the jury that the crimes under consideration were in fact felonies has been decided against his present contention in *Griffin v. State* (1981), 275 Ind. 107, 415 N.E.2d 60. In the *Griffin* case, this Court held:

"Whether an offense is a 'felony' is purely a question of legislative categorization; it is not a question of fact for the jury, but a matter of law predetermined by the legislature and applied by the judiciary." *Id.* at 118, 415 N.E.2d at 66.

Appellant argues, however, that this Court should reevaluate *Griffin*. Appellant cites *Cavendish v. State* (1986), Ind., 496 N.E.2d 46 and *Shelton v. State* (1986), Ind., 490 N.E.2d 738 as cases indicating that *Griffin* should be reevaluated. *Shelton*, however, expressly follows *Griffin* even though Chief Justice Shepard makes the observation that the statute seems to require the State to bear the burden of proving that the crimes are felonies.

In *Cavendish*, also written by Chief Justice Shepard, the facts are clearly distinguishable from the case at bar in that in *Cavendish*, in order to establish the status of habitual offender, the State was required to prove that a conviction under a certain Tennessee statute constituted a felony. This the State wholly failed to establish. In the case at bar, the prior felonies were violations of Indiana statutes of which the trial court takes judicial notice. *See Yelton v. Plantz* (1948), 226 Ind. 155, 77 N.E.2d 895; Ind.Code § 34–3–2–1. It was entirely proper for the trial court to instruct the jury concerning the legislative designation of the crimes committed by appellant. *Griffin, supra.*

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.