**Larry Curtis STUBBS, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 49S00–8905–CR–405.

Supreme Court of Indiana.

Oct. 11, 1990.

Howard Howe, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Danielle Sheff, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received a sentence of sixty (60) years enhanced by an additional thirty (30) years for being a habitual offender.

The facts are: On the afternoon of July 25, 1987, a car pulled up and honked its horn in front of the home of the victim, Dorothy Reed, located on North Alabama Street in Indianapolis. The driver instructed Reed's nine-year-old son to go in the house and tell Reed he wanted to see her. The child complied, and when he told his mother, she looked out the window and said, "That ain't nobody but Larry. Let me go out there and see what he wants."

Reed walked out of the house and as she approached the car, she saw the driver was aiming a pistol at her. She cried out, "Oh, Lord, no," and when she turned to run back to the house, she was shot once in the back. Hearing the gunshot from inside the house, the victim's mother, Lourene Reed, got up and went to the door to look outside just as the victim came inside and said, "Mommy, Larry shot me." Lourene went out on the porch in time to see a car she recognized as appellant's proceeding down the street away from the house. By the time she went back inside, her daughter had collapsed on the dining room floor. Police were called and an ambulance also was dispatched, but the victim was pronounced dead shortly after arrival at the hospital.

In the early morning hours of August 12, 1987, Illinois State Trooper Susan Acord noticed appellant driving erratically and stopped him. Appellant gave his name as Larry Jones and a computer check turned up nothing. Noting a strong odor of alcohol, Trooper Acord administered a field sobriety test which appellant failed. She informed him he was under arrest for driving under the influence and proceeded to confiscate four opened bottles of liquor from his car. In the process, the trooper found a magazine clip loaded with .45 caliber ammunition. She asked appellant the location of the weapon. He said it was in the trunk but he had lost the key.

While a tow truck was hooking up to appellant's car, he asked to speak privately to Trooper Acord. He informed her of his real name and that he was wanted for murder. Upon radioing for another computer check, the trooper confirmed there was a murder warrant outstanding for appellant. She then handcuffed appellant and informed him of his *Miranda* rights. During transport to the jail in Tuscola, Illinois, appellant made several statements indicating he was not guilty of the murder charge. She subsequently obtained a search warrant for appellant's impounded car and found in its trunk a .45 caliber semiautomatic replica of a Thompson submachine gun, along with some spent .22 caliber rimfire cartridges and a few live rounds. However, the bullet recovered from the victim's body turned out to be dissimilar in type to either the weapon or the cartridges found in appellant's car.

Appellant contends the trial court erred in admitting testimony pertaining to remarks made by him, and evidence discovered as a result of those remarks, prior to being advised of his *Miranda* rights by Trooper Acord. He argues that once she discovered the magazine clip in his car, she should have realized that he could have been involved in criminal activity and at that point was required to read him his rights. Because she did not, he maintains, it was error to admit evidence of his remarks leading to discovery of the weapon and ammunition found in his car's trunk.

■ Appellant concedes that routine administrative questioning incident to an arrest does not amount to custodial interrogation. *Nading v. State* (1978), 268 Ind. 634, 377 N.E.2d 1345. Nevertheless, citing *Staton v. State* (1981), Ind.App., 428 N.E.2d 1203, he argues the trooper's question as to the whereabouts of the weapon using the magazine clip was reasonably likely to elicit an incriminating response and thus amounted to custodial interrogation. However, if it does not appear that the purpose of the inquiry is to elicit a confession, *Miranda* is not triggered and no advisement of rights is necessary. *Boarman v. State* (1987), Ind., 509 N.E.2d 177. Clearly, where the purpose of the question is to locate and secure any weapons in the suspect's possession, *Miranda* warnings are not required. *Johnson v. State* (1971), 256 Ind. 497, 269 N.E.2d 879, *cert. denied,* 405 U.S. 921, 92 S.Ct. 958, 30 L.Ed.2d 792. We further note that appellant's statement regarding his correct name and "wanted" status was volunteered without any prompting from Trooper Acord and thus raises no *Miranda* concerns. *See Poling v. State* (1987), Ind., 515 N.E.2d 1074, *cert. denied,* — U.S. ——, 109 S.Ct. 1646, 104 L.Ed.2d 161.

Appellant also maintains that a copy of the search warrant issued to inspect his car's trunk, as well as the items found therein, were admitted into evidence erroneously because the information supporting the application for the search warrant was obtained in violation of *Miranda* and because the search warrant was not prop-

erly authenticated by certification under seal by the legal custodian of the original document. As discussed above, however, appellant's *Miranda* rights were not violated when Trooper Acord asked about the weapon using the magazine clip.

■ The contested copy of the search warrant was admitted as part of State's Exhibit No. 32, which consisted of five pages stapled together and included the complaint for search warrant, supporting affidavit, and the warrant itself. The top page of the exhibit bears a stamped certification over seal signed by the clerk of the circuit court of Douglas County, Illinois. This certification does not purport to cover the pages following, the last of which is the warrant itself. However, Trooper Acord, who made application for, witnessed the issuance of, and served the search warrant, testified as to her personal knowledge regarding the warrant and that the exhibit included a true and accurate copy of the original warrant. Because the witness testified as to her personal knowledge of the processing of the warrant and of the facts set out therein, the hearsay problems attendant to admission of a document were overcome, and strict authentication by certification as an official record was not necessary. The copy of the search warrant was properly admitted.

The trial court did not err in admitting the testimony pertaining to appellant's pre-advisement remarks and the evidence discovered as a result.

■ Appellant contends the trial court erred in refusing to admit in evidence for impeachment purposes Defense Exhibits Nos. 14 and 16 consisting, respectively, of transcripts of statements taken by police of witnesses Emma Turner and Lourene Reed. Turner testified at trial that she had seen appellant at the Reed home only once prior to the day of the shooting. In her statement to police given that evening, she said she had seen him visit the Reed residence "pretty regular." When defense counsel attempted to impeach Turner with the prior inconsistent statement, she denied having said it, and counsel moved the transcript in evidence.

The prosecution objected, arguing no proper foundation had been laid, the transcript included inadmissible material, and it had underlinings and extraneous markings on it. The court then asked the witness whether she had ever seen the statement before and, noting it was not signed, whether she had ever signed it. Turner replied she had not seen that document before and did not think she had signed it. The court sustained the State's objection.

To lay a proper foundation for impeachment by means of a prior inconsistent statement, the witness must be given the substance of the prior statement along with the date, place, and person to whom it was made to enable the witness to explain any inconsistency. *Collins v. State* (1988), Ind., 521 N.E.2d 682. The unsigned and marked-up characteristics of the transcript plus the witness's denial that she had ever seen or signed the exhibit justify the trial court's decision.

■ Lourene Reed testified at trial that just prior to the shooting, she "heard a car horn blow out front and I got up and went to the window to see who it was," and by the time she got to the window, her grandson had come into the house to say it was someone wanting his mother. On cross-examination, when defense counsel asked her if the perpetrator's car had not been a long way down the street for her to identify the driver after the shooting, she replied, "Yes, but I had already seen him in front of the house."

Defense counsel then reminded her that in her statement given to police the evening of the crime, when asked to tell what she knew of the incident, she had stated as follows:

"Well, all that I know is that [the witness's grandson] came in the house, and said, Mommy it's a man out there, wants to see you, and she [the victim] peeped out the window, and she said 'ah, that ain't nobody but Larry, let me go out and see what he wants.' Well, I went back and sit down, and by the time that I sit down I heard a shot, and I all of us jumped up and headed for the door, but, she came in the door, before I could get out of the door. She said, 'Mommy, Larry shot me.' "

Defense counsel then asked Reed if during that interview, she had ever told the detective that she had looked out the window before the shot was fired, to which she replied, "Yes, I think I did." After allowing the witness to examine the transcript of the interview, defense counsel asked her, "Did you tell [the detective] anything about going to the window before the shot was fired when you talked to him the evening after this event occurred?" to which she responded, "Yes, because I looked out the window before she even got in the room." After having the witness identify the transcript as an accurate one of her interview with the police, defense counsel moved it in evidence as Defense Exhibit No. 16.

The State objected for the same reasons it had contested the admission of Defense Exhibit No. 14. The court, however, refused to admit No. 16 because he found her prior statement not to be inconsistent and of no impeachment value. The State similarly argues on appeal that the prior statement was merely less detailed than Reed's trial testimony.

An examination of pertinent portions of the record set forth above reveals that Reed's prior statement is not directly inconsistent with her account at trial, nor does it foreclose the possibility that she might have seen appellant's car out her window prior to the shooting. Of course, her affirmative answers on cross-examination that she had so stated in her police interview could be impeached by the absence of any such remark in the transcript. However, they were followed immediately by explanations referring to her observations at the time of the crime itself, rather than to what she had told the police; thus these responses also were not directly impeached by her prior statement.

Moreover, as with Turner's prior statement, defense counsel was able to read the pertinent part of Reed's interview in front of the jury while cross-examining her. In view of this fact and of the transcript's equivocal value in impeaching the witness's

trial testimony, we fail to find prejudice sufficient for reversal in the trial court's refusal to admit it in evidence. *See Sharp v. State* (1989), Ind., 534 N.E.2d 708, *cert. denied,* —— U.S. ——, 110 S.Ct. 1481, 108 L.Ed.2d 617.

There was no reversible error in the trial court's refusal to admit Defense Exhibits Nos. 14 and 16.

Appellant contends the trial court erred during the habitual offender phase in instructing the jury that each prior conviction alleged by the State was a felony. He points out that the documents supporting his 1971 conviction of theft of a sum less than $100 and his 1973 conviction of violating the Offenses Against Property Act (O.A.P.A) by receiving stolen goods fail to designate the offenses as felonies or that they were punishable by more than one year's imprisonment, noting he in fact received sentences of six months and 115 days, respectively.

■ Appellant recognizes that whether a prior offense constitutes a felony is a matter of legislative categorization and thus is a matter of law for the court rather than one of fact for the jury, citing *Griffin v. State* (1981), 275 Ind. 107, 415 N.E.2d 60. Nonetheless, he argues the evidence here was insufficient to enable the trial court to determine that his prior offenses were felonies.

Notwithstanding the silence of the prior convictions' supporting documents as to the grade of offense committed, "[t]he question of whether those alleged convictions were for felonies is for the trial court to determine, based on the relevant statutes, before evidence of the convictions is presented to the jury." *Id.* at 118, 415 N.E.2d at 66. In the case at bar, over appellant's objection, the trial court did "take judicial notice of the statutes of the State of Indiana, especially as to theft in 1971, O.A.P.A. in '73, and voluntary manslaughter in 1980."

This Court takes judicial notice that the 1971 theft offense and the 1973 receiving stolen goods offense both were covered under the Offenses Against Property Act, Ind.Code § 35–17–5–3 (Burns § 10–3030),

and that by the terms of § 35–17–5–12 (Burns § 10–3039), each offense could have been punished by imprisonment for more than one year. Moreover, we have held that any conviction under the latter section constitutes a felony conviction. *Wolfe v. State* (1987), Ind., 512 N.E.2d 185. The 1980 voluntary manslaughter conviction, for which appellant received a 12–year sentence, was indisputably a felony.

In light of the foregoing, it is clear the trial court did not err in taking judicial notice of the felony status of appellant's prior convictions and in so instructing the jury.

■ Appellant contends the evidence was insufficient to sustain his conviction for murder. His argument focuses on inconsistencies between trial and pretrial accounts and among various witnesses' testimony, including their descriptions of the color of the perpetrator's car, whether its horn honked as it pulled up before the victim's house, its rate of speed while pulling away after the shooting, and remarks made by the victim and her son just prior to and just after the shooting. Appellant also maintains the State's introduction of the weapon and ammunition found in the trunk of his car served only to unduly prejudice him, as these items could not be connected to the bullet recovered from the victim's body, and because the State failed to produce the murder weapon, there was insufficient evidence to prove that he committed the murder.

On reviewing sufficiency of evidence, however, this Court will neither reweigh the evidence nor judge the credibility of the witnesses. *Pearson v. State* (1988), Ind., 523 N.E.2d 747. The conflicts in testimony set out by appellant were matters to be resolved by the jury as the trier of fact; such discrepancies go to the weight of the evidence. We will not invade the province of the jury in this regard. *See Walters v. State* (1986), Ind., 495 N.E.2d 734. Here, it was within the jury's prerogative to believe the testimony of the witnesses who identified appellant and his car. It was, of course, not necessary for the State to pro-

duce the murder weapon, and at trial appellant never objected on relevancy grounds to the admission of the evidence found in his car's trunk.

The evidence is sufficient to support appellant's conviction.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, PIVARNIK and DICKSON, JJ., concur.