Richard D. MILLER, Appellant,

v.

STATE of Indiana, Appellee.

No. 44S03–8812–CR–957.

Supreme Court of Indiana.

Dec. 7, 1988.

Swanson & Campbell, Kimmerly A. Klee, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This case is before us on a petition to transfer. The Court of Appeals affirmed the trial court in an unpublished opinion. Appellant was convicted, in trial before the court, of child molesting, a class B felony, and received a fifteen year sentence. He now directly appeals his conviction.

There are essentially two issues presented for review: (1) whether the out-of-court statements of the victim should have been admitted into evidence; and (2) whether the evidence was sufficient to support the conviction.

The female victim in this case, L., was three and one-half years old at the time of the alleged molestation. Appellant and his wife were her regular baby-sitters and L.'s mother dropped her off at appellant's home around 3:00 p.m. on the afternoon of July 17, 1985. Appellant, who is afflicted with multiple sclerosis, was the only person present in the home at that time. Testimony established that appellant and L. were alone in the house between 45 minutes and 1 hour. When L.'s mother picked her up around midnight, L. was in her pajamas and playing in the living room where appellant was present. She did not seem upset at that time. Later at her home, around 3:00 a.m., L.'s mother heard her crying and upon taking her to the bathroom discovered blood on her underwear. L. refused to let her mother examine her and eventually went back to sleep.

The child was first questioned about the source of her injury the next morning around 11:00 a.m. by her father. He, having returned home from work, asked her if someone had hurt her and she replied that she did not know. She then went out to play in the yard.

L. was questioned a second time a short while later when her father joined her in the yard. He asked her again if anyone had hurt her, and on this second occasion she answered, "Richard". She pointed to her vaginal area to indicate where she was hurt.

During the afternoon of the same day she was examined by a doctor. The following day another examined her. Both discovered two tears in her vaginal area, one at the nine o'clock position and one at the three o'clock position, one was one half and the other three fourths of a centimeter in length. There was no bruising of the external labia. Extreme pain would have been experienced at the time of this injury. One testified that the lacerations were consistent with sexual intercourse while the other testified that the injuries could have been incurred in a variety of ways.

The third questioning of L. took place later that same afternoon at the sheriff's department, at about 5:00 p.m. After seeing the doctor, L. had been taken by her parents to the welfare department where they met with a worker. The parents, joined by the welfare worker, then took L. to the sheriff's department where they met with a female deputy. L. was interrogated by the deputy in the presence of her parents. When asked how she had been hurt and who had done it, she responded by asking her own questions on other subjects which apparently interested her. This third period of questioning produced no incriminating evidence.

The fourth questioning of L. took place about 6:45 p.m., that same afternoon at the same stationhouse. Dissatisfied with L.'s responses, her parents and the deputy then decided to try to interrogate L. in the absence of her parents in an attempt to overcome what was perceived by them to be a reluctance of the girl to talk about her experience. L. was then left alone in the room with the deputy sheriff and the welfare worker. She was further interrogated using anatomically correct dolls. Both reported that L. was difficult to interview but after much hedging she stated that she had been hurt and pointed to her vaginal area and stated "Richard" had hurt her. She also stated that he had used his "potty" thing, referring to the penis. This fourth session was tape recorded, and a transcript of it admitted as evidence at trial on the question of guilt or innocence over a hearsay and confrontation objection by the defense. Such ruling forms the basis for appellant's main appellate contention.

L. was present in the court house at the time of trial, but did not testify. She was however, questioned by the trial court for the purpose of determining her competency to testify. This took place outside the presence of appellant, by stipulation of the parties. Defense counsel was permitted the opportunity to question L., but declined, as all agreed from her responses to the judge's questions that she was incompetent. The court determined that she was not capable of understanding the nature and obligation of an oath and declared her to be incompetent and unavailable to testify. After this determination, appellant was given the opportunity to hear a tape recording of the court's questioning.

### I.

Appellant stands convicted of child molesting, a class B felony, a crime defined in I.C. 35–42–4–3(a), charging him with having performed sexual intercourse with L., a female child, who was then under twelve, namely three years of age. The conclusion that an act of sexual intercourse took place with the child, and the identification of appellant as the person who committed that act, rests upon the inferences stemming from evidence of appellant's lone access to her for an hour, of the vaginal injuries suffered by the girl and discovered eleven hours after that access when, two hours after being put to bed by her mother, she began crying hysterically, and of the testimony of the examining physicians, coupled with the challenged statement which the girl gave to the police interrogators. The stationhouse statement is crucial evidence of guilt because it directly identifies the act as penetration by the penis, and appellant as the actor.

I.C. 34–1–14–5, governing the competence of witnesses in criminal cases through its incorporation by I.C. 35–37–4–1, provides:

"The following persons shall not be competent witnesses:

\* \* \* \* \* \*

... Children under ten [10] years of age, unless it appears that they understand the nature and obligation of an oath".

Applying the procedures for protecting children during testimony, provided for by I.C. 35–37–4–8, the trial judge, as aforesaid, questioned the child L. outside the presence of the defendant. She was by then four years old. The court determined that she could not understand the nature and obligation of an oath, and thus could not be a competent witness in the trial of appellant. The correctness of this ruling is not in question in this appeal.

The trial court did however, over objection, go on to admit L.'s stationhouse statement incriminating appellant. The statement was sponsored by the police interrogator. This ruling was made pursuant to the authority of I.C. 35–37–4–6, governing the admission of out of court statements of children under ten years of age alleged to be the victims of sexual attack. There was no discrete hearing for this purpose attended by L., after notice to appellant of his right to be present as contemplated by I.C. 35–37–4–6(c)(1). The ruling of the court was apparently based upon the evidence presented at the hearing to determine competence and at the bench trial. The court

relied upon the stationhouse statement of L. in determining guilt.

The recently enacted statute, I.C. 35–37–4–6, provides that, if certain criteria are met, statements or videotapes made by child sex crime victims are admissible into evidence when the child victim does not testify at trial. The child making the statement or videotape must be under the age of ten. L. was three. The statement must concern an act which is a material element of the crime committed against the child. L.'s statements here concerned the use of appellant's penis to penetrate L.'s vagina and went directly to the material elements of the crime. The statements of the child victim must be otherwise inadmissible. L.'s statements were clearly inadmissible hearsay, as L. was unavailable for cross examination at trial and the statements do not fit into any of the recognized exceptions to the hearsay rule. The statute further provides that if the child victim is unavailable, the statement is only admissible if there is corroborative evidence of the act committed. Vaginal abrasions discovered by two physicians are corroborative of the premise that vaginal penetration occurred.

This case is clearly of the type contemplated by the legislature in enacting this protective statute. I.C. 35–37–4–6 survived a constitutional challenge in *Miller v. State* (1987), Ind., 517 N.E.2d 64. What is now challenged is that statute as applied in this instance.

In *Miller, supra,* this court took a close look at both the constitutionality of I.C. 35–37–4–6 and the proceedings attendant upon assertion of the statute as a basis for admission of certain statements or videotapes. Chief Justice Shepard noted the following:

> "Although state statutes vary greatly, nearly all explicitly require that the defendant have an opportunity for cross-examination, either at trial or when the statement is made. Some states allow investigating officers or therapists to videotape a statement without the defendant present but permit admission of

such statements only if the victim is available for cross-examination at trial.

The documented history of the Indiana statute, although lean, indicates that the legislature intended that the hearing on the admissibility of the child victim's statement be adversarial in nature with full confrontation between defendant and victim. The legislature intended that the child testify during this hearing even if the child will be unavailable for trial.

\* \* \* \* \* \*

We agree with the Court of Appeals that the 'purpose of [this] pre-trial hearing, with notice to the defendant and with the child present, is to give the defendant the right, under less traumatic circumstances than a trial, to inquire into the statement or ask the child questions about it.' *Miller, [v. State* (1986), Ind.,] 498 N.E.2d [1008] at 1012. By enacting Ind.Code § 35–37–4–6, the legislature did not intend to restrict the defendant's right of cross-examination but only to require that it occur in an atmosphere less traumatizing to the child victim.

\* \* \* \* \* \*

The legislature's objective in enacting Ind.Code § 35–37–4–6—reducing the trauma for child victims in sexual abuse cases and easing the task of prosecuting the perpetrators, while preserving the defendant's right to confrontation—is consistent with the purpose of the state and federal confrontation clauses. The statute provides for videotaped testimony only when the trial court finds, in a hearing involving the defendant and the victim, that the statement has sufficient indications of reliability. The child must also testify at trial or be found by the court to be unavailable as a witness. Unavailability may be predicated only upon doctors' certifications or a court finding that the child is legally incompetent. Finally, the statute requires that other evidence corroborate the crime. It also requires the defendant have a fair opportunity to prepare a response to the statement before trial.

\* \* \* \* \* \*

Although the statute does not explicitly provide that a child declared unavailable for trial may be cross-examined before trial, the legislative history and the implicit meaning of the statutory language show that was the intent.

\* \* \* \* \* \*

In the case at bar, the videotaped statement substituted for the victim's testimony at trial. Considering the critical nature of A.M.'s statement in relation to Miller's conviction, the videotaping session was certainly 'a criminal proceeding in which the accused may be condemned to suffer grievous loss of either his liberty or property.' [*Bowen v. State* (1975), 263 Ind. 558, 334 N.E.2d 691 at 695]"

The statute provides that a hearing, attended by the child, be held to determine whether the out of court statements contain sufficient indicia of reliability to warrant admissibility. *Miller* established that that hearing is intended to be adversarial in nature and to provide the defendant with the opportunity for full cross-examination.

 There are three core statutory requirements which must be satisfied before the pre-trial statement of a child victim who cannot testify at trial can be used against the accused at trial. All three must be present and together they may provide a sufficient legal surrogate for the exercise by the accused at trial of cross-examination. The first is the conduct of an admissibility hearing attended by the child victim and for which provision has been made for the attendance of the accused and his counsel, and at which the accused is afforded full right to cross-examine and confront the witness. This would include the opportunity for a physical, immediate face-to-face confrontation. *Coy v. Iowa*, — U.S. ——, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988). The second is the determination "that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability ...". I.C. 35–37–4–6(c). The third is that there must be "corroborative evidence of the act that was allegedly committed against the child." *Id.* We hold in this case that two of the core requirements

were not met. Appellant was not provided an adequate opportunity to cross-examine L., as required by our *Miller* case and *Coy v. Iowa, supra.* A separate hearing should have been held for the purpose of affording appellant the opportunity to confront the child as defense counsel tested her credibility in regards to the statement, *via* cross-examination.

In addition, the determination of the court that there were sufficient indications of reliability surrounding the stationhouse statement is not adequately supported. While the child's inability to understand the nature and consequences of an oath does not render her statement inadmissible as a matter of law, it is a significant negative factor. That inability bespeaks the lack of conscience and the absence of an understanding of duty. Her age bespeaks a major disability in observing, remembering, recollecting, and describing experiences. She was under intense control and scrutiny from 11:00 a.m. until the statement at 6:45 p.m. During the time, she was subjected to a stressful physical examination by the doctor. She was taken to the welfare department where she was confronted with a strange adult. She was then taken to the sheriff's office where she was confronted in these strange surroundings by yet another stranger. When she did not concentrate upon the questions being asked her, she was left alone with two strange adults, who with difficulty, finally elicited the answers sought and expected. One cannot imagine a more exhausting, stressful, and coercive situation. The questioning did not commence by drawing the child's attention to her injury and then posing non-suggestive questions to get the child to reveal the source of that injury. Instead, the interview commenced with the following question:

JoAnn: "O.K., now, I need you to sit up, put your Pepsi at ... that a girl, and I need you to talk right into that. Don't pick it up. I just need you to talk into it and I need you to tell us just exactly what happened when you were at the babysitter's

with Richard and, at Richard and Pat Miller's."

L: "I don't know how to talk in it." We find that the conclusion of the trial court that the circumstances surrounding the making of this statement provided sufficient indicia of reliability to enable its admission is not adequately supported.

There is an additional question regarding the ruling admitting the stationhouse statement. The judge, in making the ruling, and later following the motion to correct errors, stated the statement had sufficient indications of reliability due to the corroborating testimony of the doctor. This evidence should not have been considered as to the reliability of L.'s statement. I.C. 35–37–4–6 requires that corroborative evidence be presented whenever a child is determined to be unavailable for testimony. This is an additional requisite for admission of the statement and cannot be used to bolster the reliability of the statement. The focus by the trial court should be upon the time, content and circumstances surrounding the making of the statement itself, not outside occurrences.

What occurred here and seems able to reoccur under a literal interpretation of the statute is that an interview of a child, carefully orchestrated following earlier questioning (or even rehearsal), with questions designed to elicit the desired responses, would be admissible against a defendant in a sexual abuse case. While recognizing the need to protect young victims from unnecessary trauma, this goes too far. At the very least a defendant is entitled to have the trier of fact decide for themselves what limitations the child victim possesses. At a minimum, this should entail the defendant having an opportunity to cross-examine the victim and have that cross-examination relayed to the trier of fact in the same manner as the statement. It seems unfailingly important that in weighing the value of the child's statement the trier of fact have the opportunity to consider the child's responses when questioned by someone other than a sympathetic interviewer.

It should be further noted that in *Miller*, which was remanded for a new trial due to denial of the opportunity for cross-examination, the child's statement was videotaped. With a videotape the jury or judge would be able to observe the mannerisms of the child, the hesitations in answers, or the ring of uncertainty or untruth in the child's voice. In the case before us, the most damaging evidence against appellant was a typewritten transcript of a tape recorded interview. The typed words on an otherwise blank page can not possibly convey an accurate picture of L.'s abilities or lack thereof.

We hold that the stationhouse statement of the child L. was not admissible for two independent reasons, one being that appellant was not provided an adequate opportunity to cross-examine L. and the other being that the circumstances surrounding the taking of the statement, as shown by the record of trial court proceedings, do not show sufficient indicia of reliability.

II.

Appellant next raises the contention that the evidence is insufficient to support his conviction. This conviction must be reversed because of the error in admitting the stationhouse statement of the alleged victim. Appellant argues that the evidence was insufficient to show that sexual penetration occurred and that he performed the act. In making this determination this Court will not reweigh the evidence or judge the credibility of the witnesses. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670.

The evidence supports the inference that appellant, though handicapped, was capable of engaging in sexual intercourse. He had access to her alone while baby sitting. One physician testified that her injury was consistent with sexual penetration by use of the penis, and inconsistent with accidental injury or self-inflicted injury by use of an instrument. The child's statements named appellant as the perpetrator of the act. Accordingly, the claim now on appeal that the evidence was insufficient to convict, fails.

Transfer is granted, the opinion of the Court of Appeals is vacated, and the conviction is reversed.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

PIVARNIK, J., would deny transfer.