**David Bruce DITCHLEY, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 49S00–8810–CR–898.**

Supreme Court of Indiana.

Aug. 31, 1989.

S. Sargent Visher, Choate Visher & Haith, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant David Bruce Ditchley was found guilty following a jury trial in the Marion Superior Court Criminal Division of two counts of Child Molesting and one count of Incest. He was also determined to be an habitual offender. The trial court subsequently sentenced Ditchley to a term of eight (8) years on Count I, Child Molesting, enhanced by thirty (30) years pursuant to the habitual offender finding, a term of two (2) years on Count II, Child Molesting, and a term of two (2) years on Count III, Incest. The terms on all three counts were ordered to be served concurrently.

Four issues are presented for our review in this direct appeal as follows:

1. trial court error in excluding testimony pursuant to the rape shield statute;
2. the giving of final instructions 33, 34, and 35;
3. refusal to inform the jury during the habitual offender phase of the trial of the penalties; and
4. sufficiency of the evidence.

The victim, L.D., was born on July 13, 1975, and is Defendant–Appellant Ditchley's daughter. She testified that on several occasions during the summer and fall of 1987, her father would come to her bed at night when everyone was asleep and would fondle the area of her vagina with his fingers. He also placed his tongue there and performed cunnilingus on her. He would also attempt to have her perform fellatio on him by placing his penis in her mouth.

In November, 1987, Ditchley's sister Diana Rhude and her three children came to live with Ditchley and his family. The six children shared two bedrooms, Ditchley and his wife had their bedroom, and Diana slept on the couch in the living room. Diana awoke one evening to the sound of one of the children whimpering and went into the children's bedroom to see if anything was wrong. She turned on the light and saw Ditchley on the bed with the victim. The victim's nightgown was pulled up to her waist and her panties (or shorts) were pulled down to her knees. When Diana

saw this she asked Ditchley what he was doing and he responded, "Nothing," and also told her to turn off the light. Diana went back into the living room and Ditchley shortly joined her there. He said that he "had to figure this out," and Diana agreed with him. She did not make an issue out of what she had seen for fear that Ditchley would make her and her children leave his home and they had nowhere else to go.

In January, 1988, the victim told a social worker at school that her father had been "messing with her." The authorities were contacted and an investigation ensued. Officer Linda Brown spoke with Ditchley and he told Brown that, if the acts had occurred, it was due to his drinking and he therefore felt he was sick and needed help. Officer Robert Hinde spoke with Ditchley on February 5, 1988, and Ditchley told Hinde he did commit the acts on L.D. He at one time would say he did it and at other times would say that whatever L.D. said was true because he knew he was not right and was many times under the influence of alcohol and marijuana and needed help.

## I

■ As a part of the investigation, L.D. was examined by Dr. Susan Gail Pardieck, a pediatrician presently employed in the Sexual Abuse Clinic at Wishard Hospital. Dr. Pardieck gave L.D. a physical examination. The doctor testified her findings were that L.D.'s condition in the vaginal area was consistent with someone of her pubertal age. There was one interruption in the hymenal tissue which she stated was consistent with the type of abuse L.D. had allegedly suffered. That is, her hymenal opening was of sufficient size to allow digital penetration and that such penetration could be performed on her without undue trauma. Although the interruption could have been due to other causes, its size and location was consistent with digital penetration. She further stated it was impossible to determine just when it occurred.

Ditchley attempted to introduce evidence that L.D. had complained that one of the neighbors had attempted to molest her about a year before any of these incidents.

Her testimony was that this man had put his hand at her vaginal area but it was through her clothing; that is, he did not reach under her clothing and touch her directly. The court granted the State's motion *in limine* regarding this evidence pursuant to Ind.Code § 35–37–4–4, commonly called the "rape shield statute." This statute limits evidence that may be admitted concerning the past sexual conduct of the victim of a sex crime. Ditchley claims the trial court erred by excluding this evidence, claiming it was pertinent to his defense because the jury had a right to know L.D. had had a prior sexual experience that could or might explain the hymenal tear revealed by the medical examination. Without this evidence, the jury would be left to infer that the only explanation of this hymenal tear was Ditchley's sexual abuse of L.D. The trial judge indicated she had read all of the reports including L.D.'s deposition recounting the sexual abuse by the neighbor which indicated that the child told the police the neighbor's hands on her vaginal area were on the outside of her clothing. She then found that did not indicate any digital penetration. She therefore denied the motion to present evidence and kept the State's motion *in limine* in effect.

The trial court is vested with discretion in ruling upon a defendant's request to submit evidence of the victim's prior sexual conduct. The trial court has discretion in weighing the probative value of the evidence against its prejudicial or inflammatory nature. *Thomas v. State* (1984), Ind., 471 N.E.2d 681, 683. The rape shield statute does allow an inquiry into a victim's past sexual conduct when "a specific instance of sexual activity shows that some person other than the defendant committed the act upon which the prosecution is founded." Ind.Code § 35–37–4–4(b)(2); *Thomas, supra.* In *Thomas*, a medical examination revealed semen in the victim's vagina and scratches on her thighs. Defense counsel attempted to question her regarding her sexual conduct with her boyfriend earlier in the day, claiming that evidence could have accounted for the presence of the semen in her vagina and the scratches on her thighs. In *Thomas*, this

Court interpreted the statute to provide that any evidence which might be admissible under this exception can be admitted only if the court finds that its prejudicial nature does not outweigh its probative value. "This determination as with other issues on the relevancy of evidence in a criminal proceeding is within the trial court's discretion." *Id.* at 683 (citing *Pearson v. State* (1982), Ind., 441 N.E.2d 468; *Turpin v. State* (1980), 272 Ind. 629, 400 N.E.2d 1119). The evidence in *Thomas* showed that the police found the victim with defendant and his brother in a car parked in an unlikely place in an alley; that the investigating officer testified he heard the victim scream for help before defendant drove the car away in an effort to escape the police; that when the police finally were able to stop the car, they found the victim was nude, crying and scared and stated she had been raped by both men. We concluded that under these circumstances, any evidence of the victim's consensual sexual activity with her boyfriend earlier that day would have had only a negligible measure of probative value which would have been outweighed by the prejudicial nature of such evidence in embarrassing the victim and subjecting her to possible public denigration. *Id.*

In the instant case, the trial court found not only that the neighbor's violation of L.D. was of negligible probative value but also that it did not, in fact, indicate there had been a digital penetration that might explain the hymenal interruption found by the examining physician. Ditchley has demonstrated no abuse of discretion meriting reversal on this issue.

## II

█ Ditchley claims the trial court erred in giving as final instructions in the habitual phase of the trial the following:

INSTRUCTION NO. 33

You are instructed that on the 1st day of April 1982, the law in Indiana provided that the offense of Robbery was a felony.

INSTRUCTION NO. 34

You are instructed that on the 4th day of April 1979, the law in Indiana provided that the offense of Robbery was a felony.

INSTRUCTION NO. 35

The Court advises you that "felony conviction" means a conviction, in any jurisdiction at any time, with respect to which the convicted person might have been imprisoned for more than one (1) year.

*Record* at 147–149.

Appellant contends that the trial court, in giving these instructions over his objection, usurped the fact-finding authority of the jury. He reasons that if the Legislature had intended that the mere fact of two prior unrelated felony convictions should operate to automatically, without exception, compel habitual offender status and resulting substantial increase in terms of imprisonment, that it would not be necessary to allow for the intervention of the jury. His conclusion is that to give these instructions usurps the jury's authority to make the necessary fact-finding determinations of legal issues. He cites *Hensley v. State* (1986), Ind., 497 N.E.2d 1053, for these principles. Ditchley is correct in his general statements of the law and our holding in *Hensley*. However, the instructions in question do not violate these principles and are not in conflict with *Hensley*. In an habitual offender determination, it is the jury's duty to determine whether or not the defendant is an habitual offender. In order to reach this conclusion, the jury must find beyond a reasonable doubt that the defendant committed at least two prior unrelated felonies. Before they can do this, they need to know what a felony is. It clearly has been determined that the definition of a felony, that is, whether an offense is classified as a felony, is a matter of law determined by the Legislature and is not a question of fact for the jury. *Shelton v. State* (1986), Ind., 490 N.E.2d 738, 744; *Galmore v. State* (1984), Ind., 467 N.E.2d 1173, 1177. The instructions in question in the instant case instructed the jury on the legal definition of a felony so that they might apply that to the evidence they heard regarding Ditchley's offenses. They were

correctly given by the trial court in the final instructions.

## III

Ditchley contends the trial court erred in overruling his request to advise the jury of the penalties he faced during the habitual offender phase of the trial. This issue has already been decided by this Court adversely to Ditchley's position. We have held that juries do not fulfill any function regarding sentences and do not have to be instructed on the sentencing provisions of the habitual offender statute. *Kalady v. State* (1984), Ind., 462 N.E.2d 1299, 1311.

## IV

 Finally, Ditchley claims the evidence is insufficient to sustain the verdicts of guilty of the two counts of child-molesting and one count of incest. His grounds for contending insufficiency seem to be that the testimony of the victim is so incredibly dubious or inherently improbable that it should not have been believed. In our review on a sufficiency question we do not reweigh evidence nor judge credibility of witnesses. When there is substantial evidence of probative value to support the conviction, the finding of the trier of fact will not be disturbed. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672.

In this case, there is not only the testimony of the victim but also the corroborating testimony of Diana Rhude who observed Ditchley in bed with the victim. The doctor testified that a hymenal interruption was consistent with the abuse described by the victim. Additionally, Ditchley made some admissions in voluntary statements he gave to police officers. There is substantial and probative evidence which supports the verdicts of guilty by the jury beyond a reasonable doubt.

The trial court is affirmed.

DeBRULER, GIVAN and DICKSON, JJ., concur.

SHEPARD, C.J., concurs in result with separate opinion.

SHEPARD, Chief Justice, concurring in result.

I continue to hold the view I expressed in *Shelton v. State* (1986), Ind., 490 N.E.2d 738, that Ind.Code § 35–50–2–8(d) demonstrates legislative intent that all the elements of proof necessary to an habitual offender finding be submitted for a jury determination. In this case, the court's final instructions nos. 33 and 34 invaded the jury's domain by telling them that Ditchley's two priors were felonies. I think that final instruction no. 35 defining a felony would have been proper standing alone. It should be for the jury to determine whether the two priors were felonies just as it is their job to decide whether there were two convictions, whether they were in the proper sequence, whether the defendant before them is the same person, and so on.

Notwithstanding, I see no basis for reversal inasmuch as the two prior convictions were clearly felonies and I join in the Court's decision to affirm.