Sam **HENDRICKS**, Appellant
(Defendant Below),

v.

**STATE of Indiana, Appellee**
(Plaintiff Below).

No. 54A01–8910–CR–409.

Court of Appeals of Indiana,
First District.

May 31, 1990.

Monica Foster, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Amy Schaeffer Good, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Sam Hendricks appeals his conviction of battery, a Class D felony.

We affirm.

Christopher Hendricks, the defendant's four-week-old infant, had been fussy for a period of about two days. On the evening of May 18, 1987, Hendricks cared for the child while his wife Vanessa prepared the evening meal. Hendricks lost his temper and struck the child causing bruises on the child's back and buttocks. He also applied pressure to the baby's legs such that the infant suffered a transverse fracture to his left femur.

## I.

Hendricks argues that by curtailing cross-examination of his wife Vanessa concerning welfare department investigations of child abuse engaged in by Vanessa and involving her older son, the trial court deprived him of his constitutional rights of confrontation and due process. Hendricks relies upon *Davis v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347.[1]

In *Davis*, the Supreme Court recognized that "subject to the broad discretion of the trial judge to preclude repetitive and unduly harassing interrogations ..., the cross-examiner has traditionally been allowed to impeach, i.e. discredit, the witness." The court emphasized that exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Olden v. Kentucky* (1988), 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513; *Davis*, 415 U.S. at 317, 94 S.Ct. at 1110–1111.

Recently, in *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 and again in *Olden*, 109 S.Ct. 480, the court reaffirmed *Davis*, holding that "a criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness and thereby to expose to the jury the facts from which jurors ... could appropriately draw inferences relative to the reliability of the witness." *Van Arsdall*, 475 U.S. at 681, 106 S.Ct. at 1436 cited in *Olden*, 109 S.Ct. at 483.

■■■ The State argues that Hendricks was properly prohibited from exploring suspicions that Vanessa Hendricks abused her older son because the defense was seeking to impeach Vanessa by improper means. Plainly, Hendricks' purpose in offering the testimony was to cast suspicion on Vanessa and demonstrate a motive for testifying falsely. In Indiana, the credibili-

---

**1.** Hendricks argues that the trial court's actions violated both the Sixth Amendment and the Due Process Clause but he cites only *Davis v. Alaska*, a Confrontation Clause case. We will therefore not undertake separate analysis of the due process issue.

ty of a witness may not be impeached by specific acts of misconduct which have not been reduced to conviction. *Hansford v. State* (1986), Ind., 490 N.E.2d 1083, 1091; *Little v. State* (1980), Ind.App., 413 N.E.2d 639, 643. The general credibility of a witness ordinarily may be attacked only by showing that the witness has been convicted of treason, murder, rape, arson, burglary, robbery, kidnapping, forgery, perjury or other crimes involving dishonesty or false statement. *Hodge v. State* (1982), Ind., 442 N.E.2d 1006, 1011.

Even so, it is now clear that state-imposed evidentiary rules, whether a product of legislation or common law, must yield to the weightier Sixth and Fourteenth Amendment rights of a defendant to conduct reasonable cross-examination and to receive a fair trial. *Cf. e.g., Olden*, 109 S.Ct. 480 (evidence of cohabitation, offered to show motive to lie, excluded by trial court because probative value outweighed by potential for prejudice); *Davis*, 415 U.S. 308, 94 S.Ct. 1105 (evidence that witness on probation for burglary prohibited based upon state statute designed to protect anonymity of juvenile offenders); *Chambers v. Mississippi* (1973), 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (voucher and hearsay rules). Indeed, trial court restrictions on the scope of cross-examination may "effectively ... emasculate the right of cross-examination itself." *Delaware v. Fensterer* (1985), 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15.

■ Normally, the Confrontation Clause is satisfied when the defense is given a full and fair opportunity to probe and expose infirmities in a witness' testimony, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony. *Id.* at 23, 106 S.Ct. at 296. Hendricks tried on two occasions during cross-examination to explore Vanessa's own involvement in the physical abuse of her children. Those attempts were met with a relevancy objection which

was sustained, preventing any inquiry at all into the circumstances surrounding a recent incident involving Vanessa's son Robert.[2] The defense was able to establish however that Vanessa, virtually the exclusive caretaker of the children, did not discover the infant's injuries for almost a day, even though she diapered the child and dressed him on at least two occasions during that period.

Vanessa testified in response to the State's questions that she rarely left the children alone with Hendricks because she was scared of him. A reasonable jury might have received a significantly different impression of Vanessa had defense counsel been permitted to pursue its theory that Vanessa was the abusive parent. We conclude the trial court improperly denied Hendricks the opportunity to impeach Vanessa for bias, thereby depriving him of his Sixth Amendment right of confrontation.

■ However, like other Confrontation Clause errors, a denial of effective cross-examination is subject to harmless error analysis. *Olden*, 109 S.Ct. 480, 483; *Van Arsdall*, 475 U.S. 673, 685, 106 S.Ct. 1431, 1438.

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors including the importance of the witness' testimony in the prosecution's case, whether the testimony is cumulative, the presence or absence of evidence corroborating or contradicting the testimony of witnesses on material points, the extent of cross-examination otherwise permitted, and, of course the overall strength of the prosecution's case.

*Id.*

Although certainly the issue of identity would have been closer for the jury, Vanes-

---

**2.** The State maintains that Hendricks has waived argument on the constitutional question by failing to make an offer to prove. An offer to prove is not required on cross-examination.

*Coates v. State* (1989), Ind., 534 N.E.2d 1087, 1094; *Strickland v. State* (1977), 265 Ind. 664, 359 N.E.2d 244, 248.

sa Hendricks' testimony was not particularly critical to the State's case on that issue. Essentially, Vanessa established that Hendricks had the opportunity to commit the crime within the relevant time frame constructed by the infant's physicians. Vanessa also reported what she had heard from another room on the evening the child was injured. Yet, Hendricks admitted causing the injury. Hendricks' final version of the manner in which the injuries occurred which Hendricks gave to the police is consistent both with the medical description of the injuries and Vanessa's perceptions. It is the only account offered by Hendricks compatible with the medical evidence.

Hence, the remaining evidence offered against Hendricks was substantial of itself without the damaging testimony from Vanessa. We are convinced that under the circumstances, the denial of full and fair cross-examination was harmless beyond a reasonable doubt.

## II.

■ Hendricks contends the statements of his wife, Vanessa, and the child's physician, Dr. Kirtley, which came into evidence through the testimony of Detective Meadows, were inadmissible hearsay as neither declarant acknowledged having made the statement. Officer Meadows related Vanessa Hendricks' statement that while she was fixing supper on Monday evening, May 18, 1987, and Hendricks was attending the child, she heard a smack, then the baby cried louder. Statements attributed to Dr. Kirtley by Meadows concerned his determination that the kind of fracture suffered by the child was inconsistent with the explanation given him by the father, which was that he had placed the child up against his shoulder as if to burp him, heard a pop, thought it was his own shoulder but later decided it must have been the child's leg fracturing.

Both Vanessa Hendricks and Dr. Kirtley testified. Neither acknowledged having made the statement to Officer Meadows, but both witnesses testified in a fashion consistent with the statements attributed to them by Meadows. In fact, Dr. Kirtley

related without objection from Hendricks the statements made to him by Hendricks concerning the manner in which the injury occurred, and Hendricks admitted making the statements.

■ In *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, the Indiana Supreme Court held relevant out-of-court assertions are admissible as substantive evidence if the declarant is present and subject to cross-examination. However, mere presence in the courtroom is insufficient. A declarant must either acknowledge making the prior statement, *Lambert v. State* (1989), Ind., 534 N.E.2d 235; *Payne v. State* (1987), Ind.App., 515 N.E.2d 1141, or testify consistently with the out-of-court statement and then be subject to cross-examination. *Brown v. State* (1979), 271 Ind. 129, 390 N.E.2d 1000; *Jackson v. State* (1985), Ind.App., 485 N.E.2d 144, 148, n. 11, *trans. denied,* cited with approval in *Lambert,* 534 N.E.2d at 236–237.

Both out-of-court declarants were subject to cross-examination on the substance of prior statements. There is therefore no reversible error presented in the admission of these statements.

## III.

Hendricks contends his confession should not have been admitted into evidence because it was the product of coercion, obtained without proper *Miranda* admonitions. Hendricks concedes that he was familiar with his *Miranda* rights, that he received *Miranda* warnings and signed a waiver of rights form before any questioning but he maintains that he should have received a fresh set of warnings when the officer returned from a five-minute conference with Vanessa. The coercive pressure employed by the investigator was the separation of Hendricks from his wife and statements made by the officer that he needed to know what had happened to the child to assure the infant received appropriate medical care.

■ The State has the burden of proving beyond a reasonable doubt that Hendricks' confession was voluntary and

that he knowingly, voluntarily and intelligently waived his rights to remain silent and to consult with counsel. *Tawney v. State* (1982), Ind., 439 N.E.2d 582, 586. When reviewing the denial of a motion to suppress and the admission of a confession into evidence we look to the evidence supportive of the trial court's ruling to determine whether it is substantial and probative and hence sufficient to sustain that ruling. *Id.* An advisement in accordance with *Miranda* guidelines need not be repeated so long as the circumstances attending an interruption or adjournment in the process are such that the suspect has not been deprived of the opportunity to make an informed and intelligent assessment of interests involved in the interrogation, including the right to cut off questioning. *Partlow v. State* (1983), Ind., 453 N.E.2d 259, 269, *cert. denied,* 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 219.

We conclude without hesitation that the trial court properly admitted Hendricks' confession. Hendricks admitted that he went to the station voluntarily to discuss his child's condition. Assuming therefore that the circumstances leading to Hendricks' confession can be said to be "custodial interrogation," the record shows nothing other than the coercive nature of custodial interrogation itself, which the *Miranda* warnings were designed to dispel. Furthermore, the entire conversation lasted no more than an hour and forty minutes. Hendricks knew before he agreed to waive his rights that the officer intended to talk to Vanessa separately. She was questioned for ten to twenty minutes before Hendricks was even brought into the room. How under these circumstances a five-minute conference with Vanessa could have overcome Hendricks' free will such that he was deprived of the ability to cut off questioning is difficult to imagine.

### IV.

Hendricks contends that inconsistencies in the testimony of the x-ray technician precluded admission of the child's x-rays into evidence. The x-rays were marked with the child's name. They were identified by technician Bell as the x-rays she took of the Hendricks' baby. They were also identified by the baby's physician as the x-rays he examined on the evening the child was admitted to the hospital. Hence, the x-rays were properly authenticated. *See Howard v. State* (1976), 264 Ind. 275, 342 N.E.2d 604, 608. Discrepancies between the technician's normal work schedule and the time shown on the x-ray are weaknesses in the identification of the exhibit which affect its weight, not admissibility. *Owensby v. State* (1984), Ind., 467 N.E.2d 702, 707.

Judgment affirmed.

BAKER and CONOVER, JJ., concur.