**William D. DeMOTTE,**
**Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 83A01–9001–CR–38.**

Court of Appeals of Indiana,
First District.

June 28, 1990.

Rehearing Denied Sept. 5, 1990.

Stephen L. Trueblood, Trueblood Harmon Carter & Cook, Terre Haute, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

1. IND.CODE § 35–42–4–3(a).

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

William E. DeMotte (DeMotte) appeals his conviction of Child Molesting,[1] a class B felony. We reverse and remand for a new trial.

## FACTS

On June 4, 1988, S.T.'s mother took her children, S.T., age seven, and T.O., age five, to Janet Stevens (Stevens) to care for during the night. During the evening DeMotte, also known as Buzz, visited Stevens. Stevens awoke the next morning and found DeMotte in bed with the children. His clothes were on the bedroom floor.

After the children returned home, T.O. told his mother that something happened at the babysitter's the night before, and S.T. was molested. When her mother questioned S.T. about the occurrence, S.T. refused to talk about it. S.T.'s mother asked S.T.'s stepmother to speak with S.T., and S.T. told her stepmother that Buzz took her underwear off and put his "peter", his "dick", on her privates and it hurt. S.T. then told her mother about the incident.

DeMotte was arrested and charged with child molesting. S.T. testified to the occurrence at trial. In addition, the State played a video tape of S.T. talking about the incident with a police officer and a welfare worker. During the video, S.T. also undressed and positioned dolls in order to explain what had happened to her. S.T.'s mother testified about comments made by T.O. and S.T. S.T.'s stepmother also testified about S.T.'s conversation with her. A pediatrician who had examined S.T. after the incident testified that his findings were consistent with the charge that S.T. had been molested. In addition, Stevens testified to having found DeMotte with the children.

The jury convicted DeMotte of Child Molesting, a class B felony, and the court entered judgment sentencing DeMotte to ten years incarceration. Further facts will be provided as pertinent to the discussion.

## ISSUES

DeMotte raises four issues which we re-number and restate as follows:

1. Whether the trial court erred by excluding testimony offered by DeMotte regarding S.T.'s capacity to describe sexual conduct.

2. Whether the trial court erred by admitting into evidence State's exhibit 1, a video tape of an interview involving S.T., a social worker, and a police officer.

3. Whether the trial court erred by excluding, pursuant to the rape shield statute, statements attributed to S.T.'s mother regarding S.T.'s prior sexual experience.

4. Whether the trial court erred by admitting testimony by S.T.'s mother regarding a statement made by T.O.

## DISCUSSION AND DECISION

*Issue One*

DeMotte argues the trial court erred in excluding testimony regarding S.T.'s capacity to describe accurately the alleged molesting. The trial court sustained the State's objections to DeMotte's questioning of S.T.'s mother about S.T.'s knowledge of human and sexual development and about the mother's knowledge of S.T.'s comments to S.T.'s stepmother about human sexual activity. The court prohibited DeMotte from questioning S.T.'s stepmother about S.T.'s description of sex acts S.T. purportedly had witnessed at S.T.'s mother's home. The court also prohibited DeMotte's questioning of the investigating police officer about S.T.'s capacity to describe accurately what she reported. Finally, DeMotte asserts trial court error in prohibiting DeMotte from questioning a school administrator about S.T.'s emotional problems and about the results of an adaptive behavior test given to S.T. The results purportedly indicated "S.T.'s poor academics, poor intellectuality, poor attention, excessive anxiety, excessive withdrawal, poor ego strength, poor sense of identity, poor reality contact, and excessive resistance ..." Record at 261.

DeMotte relies upon *Lawrence v. State* (1984), Ind., 464 N.E.2d 923, 925 for support:

> "Whenever an alleged child victim takes the witness stand in such cases, the child's capacity to accurately describe a meeting with an adult which may involve touching, sexual stimulation, displays of affection and the like, is automatically in issue, whether or not there is an effort by the opponent of such witness to impeach on the basis of a lack of such capacity."

The court noted that "opinions from parents, teachers, and others having adequate experience with the child, that the child is not prone to exaggerate or fantasize about sexual matters" constitute relevant testimony. *Id.* at 925. In a subsequent opinion, the court noted expert testimony "as to whether *or not* the child is prone to exaggerate or fantasize" is admissible. *Head v. State* (1988), Ind., 519 N.E.2d 151, 153 (emphasis added).

DeMotte contends opinions of others attacking a child's credibility are also admissible. DeMotte is correct. It is important for a jury to have all the circumstances and facts affecting the credibility of a witness in order to evaluate properly the testimony of the witness. *Drollinger v. State* (1980), 274 Ind. 5, 21, 408 N.E.2d 1228, 1239. A party may attack the credibility of a witness by showing a defect in the capacity of the witness to observe, remember, or recount the matters testified about. *Wells v. State* (1979), Ind.App., 397 N.E.2d 1250, 1258–59, *trans. denied*. Most persuasive is our supreme court's holding in *Henson v. State* (1989), Ind., 535 N.E.2d 1189, 1193, that it would be fundamentally unfair to permit the State to present evidence an alleged victim suffered from rape trauma syndrome, but deny a defendant an opportunity to present evidence showing the victim's behavior showed no evidence the victim suffered from the syndrome. Such evidence by the defendant would be relevant as it would reflect on the victim's credibility and raise a question whether the rape occurred. Barring the defendant from presenting such evidence was an abuse of the court's discretion as it "im-

pinged upon the substantial rights of appellant to present a defense." *Id.* at 1194.

We hold a complete denial of the opportunity to impeach the credibility of a victim of child molesting is similarly an abuse of the trial court's discretion. Just as the State had the right to accredit S.T. by testimony that S.T. was not prone to fantasy or exaggeration, DeMotte had the right to impeach S.T.'s credibility by attacking her ability to recollect and describe what happened to her without fantasizing or exaggerating. The trial court abused its discretion and committed reversible error in denying DeMotte the opportunity to attempt to impeach S.T.

We find *Issue One* to be dispositive of the appeal. However, we will address the remaining issues because they may arise upon retrial.

*Issue Two*

DeMotte contends the trial court erred in admitting the video tape into evidence and in permitting the State to play the video tape for the jury.[2] DeMotte grounds his argument in part on an assertion the tape was at least ninety per cent inaudible, noting the trial court reporter certified the video recording was inaudible for the reporter to transcribe.

■ A trial court has wide discretion to admit a video tape. *Sharp v. State* (1989), Ind., 534 N.E.2d 708, 712 *cert. denied* (1990), — U.S. —, 110 S.Ct. 1481, 108 L.Ed.2d 617. "Taken as a whole, the tape must be of such clarity that it does not lead to jury speculation as to its contents." *Id.*

While we agree with DeMotte that a trial court exercising its discretion to admit a video tape over an objection as to its audibility and clarity should review the tape before ruling, we have reviewed the entire tape and find it to be of sufficient clarity and audibility to have been intelligible to the jury without speculation as to its contents.

■ DeMotte also contends the trial court abused its discretion in admitting the

video tape as it constituted "a sixth *Patterson* statement". Appellant's Brief at 34. "In *Patterson v. State* (1975), 263 Ind. 55, 324 N.E.2d 482, the Indiana Supreme Court held relevant out-of-court assertions are admissible as substantive evidence if the declarant is present and subject to cross-examination." *Hendricks v. State* (1990), Ind.App., 554 N.E.2d 1140. Thus, DeMotte appears to argue the video tape constituted an out-of-court declaration by S.T.

Mere presence in the courtroom of a declarant who has made an out-of-court assertion is not sufficient to meet the *Patterson* standard. "A declarant must either acknowledge making the prior statement, or testify consistently with the out-of-court statement and then be subject to cross-examination." *Hendricks*, at 1144 (citations omitted). At trial S.T. did not acknowledge making the prior video tape. However, she testified consistently with her video tape statement and she was subjected to cross-examination. Therefore, the trial court did not err in admitting the video tape as an out-of-court declaration by S.T.

■ In making his argument that the video tape "constituted a sixth *Patterson* statement", Appellant's Brief at 34, DeMotte relies upon *Stone v. State* (1989), Ind.App., 536 N.E.2d 534, *trans. denied.* In *Stone* we held it was an abuse of discretion to permit a victim's statement be bolstered by cumulative statements of six witnesses where the corroborating testimony did not "illustrate previous testimony or present a different version of the facts to which [the child victim] testified at trial." *Id.* at 538. DeMotte notes testimony was given by, among others, S.T., S.T.'s mother, S.T.'s stepmother, the welfare worker who interviewed S.T. on video tape, and the investigating police officer who also appeared on the video tape. Having reviewed the cited testimony and found additional facts or versions of the facts were stated by each witness, we hold the trial court did not abuse its discretion in admitting the video tape statement by S.T.

---

**2.** DeMotte asserts the State made no offer of Exhibit 1, the video tape. However, DeMotte does not argue the trial court erred in admitting

the tape without an offer of proof. Therefore, we will not address the matter further.

■ DeMotte also contends his statutory right of confrontation was violated when the video tape was made without a hearing to determine the reliability of the video tape. A video tape of a child under age ten concerning an act that is a material element of Child Molesting, which video tape would otherwise not be admissible, is admissible in evidence if:

"[A]fter notice to the defendant of a hearing and of his right to be present:
(1) the court finds, in a hearing:
(A) conducted outside the presence of the jury; and
(B) attended by the child;
that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability; and
(2) the child:
(A) testifies at the trial; or
(B) is found by the court to be unavailable as a witness ..."

IND.CODE § 35–37–4–6(c). The legislature intended the hearing be adversarial with physical, immediate confrontation between defendant and victim and an opportunity for the defendant to fully cross-examine the child. *Miller v. State* (1988), Ind., 531 N.E.2d 466, 470; *Miller v. State* (1987), Ind., 517 N.E.2d 64, 70; *Casada v. State* (1989), Ind.App., 544 N.E.2d 189, 193, *trans. denied.* "By enacting Ind.Code § 35–37–4–6, the legislature did not intend to restrict the defendant's right of cross-examination but only to require that it occur in an atmosphere less traumatizing to the child victim." *Miller*, 517 N.E.2d at 71. A defendant's right to an adversarial pre-admission hearing, pursuant to IND.CODE § 35–37–4–6(c)(1) is independent from the requirement, pursuant to IND.CODE § 35–37–4–6(c)(2), to have the child testify at trial or to have the court determine the child's unavailability for trial.

■ Under IND.CODE § 35–37–4–6(c)(1), the court, in the hearing, must find "that the time, content, and circumstances of the ... videotape provide sufficient indications of reliability." The court should consider such factors as the child's ability to observe, remember, recollect, and de-

scribe experiences and the child's ability to understand the nature and consequences of an oath as well as the time and circumstances of the making of the tape. *See Miller*, 531 N.E.2d at 470.

The record in the present case clearly reflects that the trial court failed to hold the required pretrial hearing after notice to DeMotte of the hearing and his right to be present. We hold the trial court erred in failing to hold a hearing which would have provided DeMotte an opportunity to confront and cross-examine S.T. and would have provided the court the opportunity to examine the video tape for sufficient indications of reliability. However, because we are reversing for a new trial on the first issue, any error in not holding a hearing regarding the use of the video tape can be rectified at the new trial.

*Issue Three*

DeMotte contends the trial court erred in failing to hold a hearing to determine the admissibility of testimony by two witnesses regarding statements by S.T.'s mother that a family member had been molesting S.T. DeMotte contends the statements were relevant to the issue of identification. The trial court justified its ruling, stating identity was not an issue and the rape shield statute prohibited inquiry into the prior sexual activity of a victim or witness.

■ The rape shield statute, IND.CODE § 35–37–4–4, limits admission of evidence about the past sexual conduct of a sex crime victim. However, it permits inquiry into such history when "a specific instance of sexual activity shows that some person other than the defendant committed the act upon which the prosecution is founded." IND.CODE § 35–37–4–4(b)(2). Nevertheless, "[t]he trial court has discretion in weighing the probative value of the evidence against its prejudicial or inflammatory nature." *Ditchley v. State* (1989), Ind., 542 N.E.2d 996, 999.

■ Even without considering S.T.'s positive identification of DeMotte in the video tape, which we determined the trial court improperly admitted without a prior hear-

ing, we find no issue of identification of the alleged perpetrator. S.T. positively identified DeMotte, whom she called Buzz, at court. In addition, Stevens testified that she discovered DeMotte in bed unclothed with S.T. and T.O. Any evidence that S.T. had also been molested by a family member would have been so prejudicial as to outweigh its negligible probative value. We find no abuse of discretion in the trial court's refusal to admit the testimony of the two witnesses to that effect.

*Issue Four*

DeMotte contends the trial court erred by admitting a statement by S.T.'s mother that T.O. had told her something had happened at the babysitter's and S.T. had been molested. DeMotte objected at trial that such testimony was hearsay.

 Hearsay is an out-of-court statement offered in court to prove the truth of the matter asserted. *Williams v. State* (1989), Ind., 544 N.E.2d 161, 162. However, hearsay testimony attributing an out-of-court statement to a third party is admissible to explain a particular course of action taken by the person testifying because the testimony is not being offered as evidence of the truth of the third party statement. *Ruby v. State* (1990), Ind.App., 549 N.E.2d 379, 382 (transfer pending). *Altmeyer v. State* (1988), Ind., 519 N.E.2d 138, 143.

S.T.'s mother's testimony was offered not to prove the truth of T.O.'s statements, but to explain why S.T.'s mother confronted S.T. and then asked S.T.'s stepmother to speak with S.T. We find no error in the trial court's admission of the testimony over DeMotte's objection.

Reversed and remanded for a new trial.

BAKER, J., concurs.

CHEZEM, P.J., dissents with separate opinion.

CHEZEM, Presiding Judge, dissenting.

I respectfully dissent. I believe the testimony excluded by the trial court and discussed in Issue I is subject to a harmless error analysis. After having examined the evidence received and the description of the evidence excluded, I conclude that if the testimony had been admitted, it would have not made a difference in the jury's verdict. *Jaske v. State* (1989), Ind., 539 N.E.2d 14, 22 (the improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction).